[No. A038738. First Dist., Div. One. June 16, 1988.]

SAN FRANCISCO POLICE OFFICERS' ASSOCIATION et al.,
Petitioners, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF
SAN FRANCISCO, Respondent;
CITY AND COUNTY OF SAN FRANCISCO et al., Real Parties in
Interest.

184

COUNSEL

Carroll, Burdick & McDonough, Miles E. Locker and William H. Sortor for Petitioners.

No appearance for Respondent.

Louise H. Renne, City Attorney, and Thomas J. Owen, Deputy City Attorney, for Real Parties in Interest.

Amitai Schwartz, Edward M. Chen, John M. Crew, Pillsbury, Madison & Sutro and Karrin L. Klotz as Amici Curiae on behalf of Real Parties in Interest.

## OPINION

**THE COURT.**\*—By timely petition for writ of mandate (Code Civ. Proc., § 437c, subd. (l)), the San Francisco Police Officers' Association (POA) et al. seek to reverse respondent court's ruling that certain of the Investigative Hearing Rules and Procedures (Rules) of the San Francisco Police Commission's Office of Citizen Complaints (OCC) do not violate the confidentiality protections set forth in Penal Code section 832.5 et seq. We issued our order to show cause and invited the Bar Association of San Francisco (BASF) to participate as amicus curiae in the proceeding. Thereafter, the BASF filed a brief in support of real parties in interest in which, upon leave granted, the American Civil Liberties Union has joined.

As we will explain, we agree with POA in part and accordingly will direct issuance of a peremptory writ.

In November 1982, San Francisco voters adopted Proposition A, which amended section 3.530 of the San Francisco Charter and added section 3.530-2 creating the OCC[1] within the San Francisco Police Department to "investigate all complaints of police misconduct . . . [and] *recommend* disciplinary action to the chief of police on those complaints that are sustained. *The director of the office of citizen complaints shall schedule hearings before hearing officers when such is requested by the complainant or member of the department and, in acordance with rules of the commission, such a hearing will facilitate the fact-finding process.*" (Italics ours.)

The OCC's recommendation is advisory only. Section 8.343 of the charter governs discipline of police personnel and provides generally for a hearing before the police commission. The chief, however, may suspend a mem-

---

\* Before Racanelli, P. J., Newsom, J., and Holmdahl, J.

[1] The parties inform us that previously citizens' complaints against police officers were investigated by the department's Internal Affairs Bureau (IAB). Although no written procedures governed such investigations, at the conclusion of an investigation, the IAB made a recommendation to the named officer's supervisors and eventually to the chief of police. The complainant received written notification that the complaint was determined to be unfounded or unproven or that the allegations had been sustained warranting disciplinary action. If the chief decided to refer the case to the police commission in order to seek discipline greater than a 10-day suspension, the complainant was so notified.

ber of the department for 10 days without a prior hearing subject to the member's right to appeal such suspension to the police commission.[2]

The charter grants to the police commission the "power and duty to organize, reorganize and manage the office of citizen complaints" and to appoint its director (hereafter Director).

The precise question put to the voters by the ballot proposition was "Shall an Office of Citizens Complaints be established in the Police Department with authority to investigate complaints made by citizens of police misconduct and recommend action to the Chief of Police?" Generally, the arguments in favor of the proposition discussed the fact that the police staffed IAB would be replaced by a citizens' investigative mechanism. One argument stressed that "Proposition A also affords persons filing complaints—and the accused officer—a hearing before a civilian hearing officer" and that the measure proposed "will better equip the Commission to carry out its responsibilities by providing a civilian investigative staff, the benefit of a hearing record, and the findings of a hearing officer in disciplinary cases arising out of citizen complaints."

### PROCEDURAL BACKGROUND

In June of 1985, the police commission adopted an elaborate set of rules and procedures governing OCC hearings. Petitioners' complaint for injunctive and declaratory relief challenged certain rules allowing disclosure of "investigation reports and related records of OCC complaint investigations, including reports of Hearing Officers' decisions and findings of fact . . . to complainants and other persons" not employed by San Francisco.[3]

On November 20, 1986, the commission adopted amended rules which then became the subject of petitioners' suit.[4] The procedural rules regulate every aspect of the investigative hearing process including qualification and appointment of hearing officers, their powers and duties, the scope and conduct of the hearings and the timing and distribution of the hearing officer's decision.

The rules allow the presence at the hearing of the OCC Director, investigative staff, the named police officer and complainant and their respective

---

[2] Apparently, there are no written procedures for police commission hearings. The officer may request a closed hearing. A citizen complainant may be called as a witness and may have a representative present during his or her testimony. If the hearing is closed, such persons are otherwise excluded. The final decision of the commission becomes a public record.

[3] The pleadings included a published account of a recently investigated complaint.

[4] The subject rules (§§ 100-906.2), denominated Investigative Hearing Rules and Procedures, will hereafter be referred to by section numbers only.

representatives. (§§ 500, 501, 501.1.) In addition, though not challenged by petitioners, section 501 allows a member of the police commission to be present as an observer "for the purpose of evaluating the hearing process," and section 502.2 authorizes the hearing officer to allow a witness who has testified to remain during the hearing when that witness's presence "will facilitate the fact finding process."

The hearing officer is required to inform all parties that the hearing is a "non-adversarial fact-finding process" (§ 705) although a designated representative is permitted to make "opening or closing statements, or otherwise argue the case being presented" (§ 603).

Of greater significance, the Rules provide that the hearing shall be "confidential" and that a "subsequent civil or criminal proceeding shall be tried as though no hearing had occurred" (§ 501.1.b). "All representatives" are required to execute a written statement under oath to maintain the confidentiality of the hearing (§ 501.1.c); however, there are no parallel requirements for the complainant or the named officer.[5]

The investigator's opinions and work product are deemed "confidential" and constitute the investigative file. (§ 606.2.) In addition, the Director may designate the identity and statements of witnesses as confidential under specified conditions. (§ 606.1.) "Confidential" information generally may not be used at the hearing or in any final report of the OCC to the chief. (§§ 606.3, 606.4.) The hearings are to be tape recorded and made part of the confidential records of the OCC. (§ 709.)

The OCC records are not public documents and may be released only as provided in the Rules. The parties and their representatives are granted prehearing access to "[a]ny evidence" provided to the hearing officer (§ 405.3) and not deemed "confidential" by the Director (§ 607).

Following the hearing, the hearing officer must prepare a (confidential) formal "Decision and Findings of Fact" and transmit it to the Director. That decision must contain a detailed statement summarizing the evidence and findings of fact (§ 801.1); the findings are binding on the Director (§ 901.1). Upon acceptance by the Director, the hearing officer's decision must be forwarded to the named member and the complainant (§ 901.2). Thereafter, the Director must evaluate the facts in light of applicable rules

---

[5] Section 405.7 does require the hearing officer to admonish those in attendance that everything about the hearing is "confidential and *should* not be repeated to anyone outside this room." (Italics ours.)

and procedures and determine whether to sustain the complaint pursuant to stated criteria. (§ 902 et seq.)

If the Director determines that the findings warrant a conclusion of improper conduct, a final report shall be prepared and forwarded to the chief of police together with a nonbinding recommendation for discipline in cases sustained by the evidence. (§ 903.) The Director is expressly authorized to transmit to the chief of police OCC confidential records "essential" for processing any disciplinary actions against a member. (§ 906.1.)

However, if the Director determines that the officer's conduct was proper, an appropriate finding shall be made and entered in the member's file; notice of such finding shall be given to the parties and the member's commanding officer. (§ 904.1.)

## DISCUSSION

Petitioners contend that as a matter of law the OCC rules which allow the complainant and his/her representative to be present during the hearing and to have access to the decision and materials considered by the hearing officer, including the Director's recommendation, violate the confidentiality provisions of Penal Code section 832.5 et seq.

Under the relevant Penal Code provisions, a state agency which employs peace officers must establish a procedure to investigate citizens' complaints against its personnel and must describe such procedure in a written form available to the public. (Pen. Code, § 832.5, subd. (a).) Such complaints and related reports or findings must be retained for a five-year period. (Pen. Code, § 832.5, subd. (b).)

Personnel records and records maintained pursuant to Penal Code section 832.5 or information obtained from these records "are confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code. This section shall not apply to investigations or proceedings concerning the conduct of police officers or a police agency conducted by a grand jury or a district attorney's office." (Pen. Code, § 832.7.)[6]

Since our review of respondent court's decision does not involve a disputed factual issue but solely questions of law, we are free to reassess the legal significance of the documents upon which the court acted. (*Goddard* v. *South Bay Union High School Dist.* (1978) 79 Cal.App.3d 98, 105 [144 Cal.Rptr. 701]; *Parsons Manufacturing Corp.* v. *Superior Court* (1984) 156

---

[6] Penal Code section 832.8 defines "personnel records" for purposes of this section.

Cal.App.3d 1151, 1156 [203 Cal.Rptr. 419].) In doing so, we first analyze the issues raised by the pleadings to which the papers submitted on a motion for summary judgment are directed. (*Vanderbilt Growth Fund, Inc. v. Superior Court* (1980) 105 Cal.App.3d 628, 635 [164 Cal.Rptr. 621].) The summary procedure initiated by a defendant necessarily includes a test of the sufficiency of the complaint, which, in such situations, is tantamount in legal effect to a motion for judgment on the pleadings. (*C. L. Smith Co.* v. *Roger Ducharme, Inc.* (1977) 65 Cal.App.3d 735, 745 [135 Cal.Rptr. 483].)

Preliminarily, we review the legislative history of the pertinent statutes.

Penal Code section 832.5, originally enacted in 1974 (Stats. 1974, ch. 29, § 1, p. 43, Assem. Bill No. 1305), was amended in 1978 at the same time Penal Code sections 832.7, 832.8 and Evidence Code section 1043 were added by Senate Bill No. 1436. (Stats. 1978, ch. 630, §§ 1, 4-6, pp. 2081-2083.) When section 832.5 was first enacted, the threshold question framed was whether a uniform statewide procedure for investigating citizen complaints should be adopted for all state and local agencies. (Legis. Counsel's Dig., Assem. Bill No. 1305, 2 Stats. 1974 (Reg. Sess.) Summary Dig., p. 7.) "It is reasonable to presume that the Legislature [acted] with the intent and meaning expressed in the Legislative Counsel's digest." (*People* v. *Superior Court* (*Douglass*) (1979) 24 Cal.3d 428, 434 [155 Cal.Rptr. 704, 595 P.2d 139].) And we may consider statements of legislative committees in discerning the Legislature's purpose. *(Palmer* v. *Agee* (1978) 87 Cal.App.3d 377, 384 [150 Cal.Rptr. 841].)

The bill as finally enacted reserved to local agencies the authority to establish and control the nature of investigatory procedures.

The report by the Senate Committee on the Judiciary indicates that the main purpose of the 1978 legislation (Sen. Bill No. 1436) was to curtail the practice of record shredding and discovery abuses which allegedly occurred in the wake of the California Supreme Court's decision in *Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305].

The analysis of Senate Bill No. 1436 prepared for the Assembly Committee on Criminal Justice notes that "[t]he thrust of this bill is to give the peace officer and . . . employing agency the right to refuse to disclose any information concerning the officer or complaints or investigations . . . in both criminal and civil proceedings." While, of course, such a report is not dispositive, it may be considered as "an intrinsic aid to help determine legislative intent." (*Shippen* v. *Department of Motor Vehicles* (1984) 161 Cal.App.3d 1119, 1126 [208 Cal.Rptr. 13].)

The report also explained that the purpose of the bill was to protect personnel records from random discovery by defendants asserting self-defense to charges of criminal assault upon a police officer.

Thus, the Legislature evidenced its purpose to provide retention of relevant records while imposing limitations upon their discovery and dissemination. Nothing in the statutory scheme, however, purported to make uniform the manner in which citizens' complaints were investigated pursuant to the mandate of Penal Code section 832.5.

Generally, article XI, section 5 of our California Constitution authorizes a city charter to make and enforce local regulations governing municipal affairs and specifically authorizes such a charter to provide for "the constitution, regulation, and government of the city police force."

" 'As to matters which are of statewide concern, however, home rule charter cities remain subject to and controlled by applicable general state laws regardless of the provisions of their charters . . . .' (*Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 61 [81 Cal.Rptr. 465, 460 P.2d 137].) Accordingly, the applicability of the [statute] to charter cities turns on whether the matters it addresses are of statewide concern or are 'strictly' a municipal affair. (*Sonoma County Organization of Public Employees* v. *County of Sonoma* (1979) 23 Cal.3d 296, 315-316 [152 Cal.Rptr. 903, 591 P.2d 1] [*Sonoma County*].)" *Baggett* v. *Gates* (1982) 32 Cal.3d 128, 136 [185 Cal.Rptr. 232, 649 P.2d 874].)

As noted, the Legislature, in mandating the establishment of appropriate mechanisms for the investigation of citizens' complaints, has relegated the format and operating procedures to the authority of each local agency, so long as the complaints and related findings are kept confidential and maintained for a minimum period of five years. The powers incidental to the performance of the duty to investigate conferred on local agencies are included by implication. (*Clay* v. *City of Los Angeles* (1971) 21 Cal.App.3d 577, 585 [98 Cal.Rptr. 582].)

San Francisco's response to the legislative mandate was the establishment of the OCC mechanism with a detailed procedure for citizen participation. As officially promulgated administrative regulations, the OCC rules are presumptively valid. (*Freeman* v. *Contra Costa County Water Dist.* (1971) 18 Cal.App.3d 404, 408 [95 Cal.Rptr. 852]; *Schenley Affiliated Brands Corp.* v. *Kirby* (1971) 21 Cal.App.3d 177, 182 [98 Cal.Rptr. 609].) And we must construe such administrative rules so as to avoid any statutory conflicts.

(See *Cal. Drive-in Restaurant Assn.* v. *Clark* (1943) 22 Cal.2d 287, 292 [140 P.2d 657, 147 A.L.R. 1028].)

■ Petitioners argue that an OCC hearing is a proceeding within the meaning of Penal Code section 832.7 which triggers the Evidence Code disclosure mechanisms whenever a complainant or representative seeks access to any other information before or during the hearing. We disagree.

The hearing is plainly an integral part of the investigatory, factfinding process itself. And it is that process which the San Francisco Police Commission has determined will best provide a fair and accurate factual resolution involving the personal participation and presence of both the complainant and named officer in testing, explaining and commenting upon the relevant evidence. What is more, such participation provides assurance to the public that the OCC's investigation is neutral. As one commentator has noted: "it is the attitude of the public toward the police discipline system that will determine the effectiveness of the system as an element of police-community relations. A system can be theoretically sound and objective in practice but if it is not respected by the public, cooperation between the police and the public can suffer." (Brent, *Redress of Alleged Police Misconduct: A New Approach to Citizen Complaints and Police Disciplinary Procedures* (1977) 11 U.S.F. L.Rev. 587, 607-608.)

Contrary to petitioners' argument, the hearing is part of the factfinding process and not, in and of itself, a record within the meaning of Penal Code section 832.7. While the hearing is tape recorded, it is the tape recording which becomes a part of the confidential records of the OCC (§ 709), disclosure of which is expressly governed by the statutory scheme.[7] Moreover, nothing in the Rules sanctions disclosure of such tape recordings to the complainant.

By parity of reasoning, we conclude that the Rules properly authorize a complainant's representative to be present at the factfinding hearing.

Nor do we perceive that the Rules allowing access to evidence to be in conflict with Penal Code section 832.7. Access to such evidence as delineated by the Rules is a necessary corollary to the fact-finding process. Petitioners make no claim—and so conceded during argument below—that

[7] In *City of San Diego* v. *Superior Court* (1981) 136 Cal.App.3d 236 [186 Cal.Rptr. 112], the issue was whether police officers could be deposed on matters contained in their personnel records previously determined to be confidential under Evidence Code section 1045. In prohibiting discovery, the court reasoned that the statutory privilege would be useless if the same information was obtainable "by the simple expedient of asking the officers for their disciplinary history orally." (*Id.,* at p. 239.) In contrast, at the time a complainant participates in an OCC hearing, there is as yet no record subject to Penal Code section 832.7 protection.

such evidence might include any reports or information concerning any complaint other than that brought by the participating complainant. It is to be remembered that access is afforded only to nonconfidential OCC records prior to the hearing. Nothing is contained in the Rules which purports to grant the complainant access to such evidence upon conclusion of the hearing. As petitioners correctly observe, in those cases in which confidential OCC records are forwarded to the chief of police (§ 906.1), they ultimately become a part of the officer's personnel file (Lab. Code, § 1198.5, subd. (a); Pen. Code, § 832.8) protected from subsequent disclosure except as expressly authorized by law (Pen. Code, § 832.7).

 However, our conclusion does not apply to the ruling below requiring dissemination of the hearing officer's findings and the Director s recommendation.[8] As earlier discussed, Penal Code section 832.5, subdivision (b) expressly requires retention of "reports or findings." Thus, these documents are clearly "records maintained pursuant to Section 832.5" within the meaning of Penal Code section 832.7. Indeed, the main thrust of POA's complaint below was aimed at rules allowing disclosure of these findings and not those rules authorizing the complainant's participation in the hearing process.

In our view, there is nothing in the statutory scheme which would preclude the Director from notifying a complainant that an OCC investigation is complete and that further action will or will not be taken. (Cf. § 802 [providing for notice of fact of hearing officer's decision].)

Let a peremptory writ of mandate issue commanding respondent to set aside that portion of its order granting summary adjudication which declares that "[t]he OCC hearing rules that allow the complainant access to the hearing officer's decision and/or the director's recommendation do not violate the confidentiality provisions of California Penal Code Sections 832.5 *et seq.*" and instead deny the motion as to that issue.

A petition for a rehearing was denied July 14, 1988, and petitioners' application for review by the Supreme Court was denied September 22, 1988.

---

[8] So far as we can determine, it is only the Director's finding of proper conduct that is provided to a complainant pursuant to section 904.1.