[No. G031269. Fourth Dist., Div. Three. Aug. 27, 2003.]

CITY OF LOS ANGELES, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
VALERIE WILLIAMSON, Real Party in Interest.

Counsel

Rockard J. Delgadillo, City Attorney, Cheryl J. Ward, Assistant City Attorney, Kim Rodgers Westhoff and Alan W. Blackman, Deputy City Attorneys for Petitioner.

No appearance for Respondent.

Law Offices of Joseph A. Shuff III and Joseph A. Shuff III for Real Party in Interest.

Opinion

**MOORE, J.**—This case presents two issues of first impression. First, we consider whether a peace officer's payroll records are "personnel records" as defined in Penal Code section 832.8, and are therefore subject to the discovery requirements of Evidence Code sections 1043 and 1045, commonly called a *Pitchess*[1] motion. Second, if payroll records are personnel records, we examine whether there should be an exception to the statutory discovery requirements for marital dissolution proceedings involving the peace officer and his or her spouse.

We answer both questions in the affirmative. The legitimate expectation of privacy recognized and protected by statute includes peace officers' payroll records. However, there is nothing legitimate about forcing the spouse of a peace officer to expend unwarranted time, energy and money to obtain those records during a dissolution proceeding. When it comes to domestic relationships, peace officers owe their spouses the same fiduciary duty to reveal financial information as any other citizen of this state. Therefore, we deny the petition for writ of mandate.

I

FACTS AND PROCEDURAL HISTORY

Robert D. Williamson (Williamson) and Valerie Williamson (real party) were married on June 8, 1979. They have no minor children. Williamson is a peace officer employed by the Los Angeles Police Department (LAPD).

Real party filed a petition for dissolution of marriage on August 5, 2002. At that time, she alleged, "[t]he full nature and extent of the parties' separate

---

[1] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305] (*Pitchess*).

property assets and debts [were] unknown." She also filed an order to show cause for spousal support, an injunctive order, and a request for attorney fees and costs. On August 28, real party served a subpoena duces tecum on the Discovery Section of the LAPD Risk Management Division demanding production of Williamson's payroll records from July 1, 2001, to the current date. The affidavit attached to the subpoena requested the production of eight types of records, including "[r]ecords of all bonuses and/or commissions," "records of all payments made to [Williamson] for reimbursement of expenses," "records of all monies paid to [Williamson] for any reason whatsoever," records of Williamson's interest in any "retirement plan and/or profit sharing plan," "saving plan, stock option and/or purchase plan," records of Williamson's interest in "any insurance plan or program," and records of any monies held in "any savings plan, credit union, deferred compensation plan, bonus plan, stock purchase plan, or for any other reason whatsoever." These records were declared to be "unavailable to [real party] through any other source," and "relevant to the issues of spousal support and attorney's fees ...."

The subpoena was directed to the City of Los Angeles Controller or its custodian of records, and it required the appropriate person to produce the requested documents or appear in the Orange County Superior Court on September 16. Mable Ling, a clerk typist for the LAPD, accepted the subpoena duces tecum and forwarded it to Analyst Eugene Mori.

Analyst Mori, acting pursuant to department policy, sent a waiver of confidentiality form to Williamson and a letter, drafted and signed by Captain Richard E. Bonneau and Chief of Police Martin H. Pomeroy, to real party's attorney, Joseph A. Shuff III. The letter explained that the LAPD considered payroll records to be "personnel records" within the meaning of Penal Code sections 832.7 and 832.8, and pursuant to Evidence Code section 1043, the requested records were "confidential and [should] not be disclosed except by discovery." The letter also noted stated, "if the concerned peace officer is willing to waive his/her right to confidentiality of the records, the Department will comply with your subpoena within 15 days of actual receipt of a waiver. The officer has been notified." In addition, the LAPD provided an information sheet listing the custodian of records for tax records, and for retirement, deferred compensation, medical insurance, dental insurance, and life insurance benefits.

Shuff telephoned Mori "and left [a] message stating his opinion that payroll records are not 'personnel records' and therefore should be released." Mori conferred with Los Angeles Deputy City Attorney Alan W. Blackman, who reaffirmed LAPD's policy. Mori returned Shuff's telephone call, but Shuff could not be persuaded. Shuff also sent a letter to the LAPD's legal

department, stating: (1) The proper response to the subpoena would be a motion to quash and not a letter, (2) payroll records are not personnel records within the meaning of Penal Code section 832.8, and (3) real party would obtain a bench warrant for the arrest of Mable Ling if the LAPD failed to comply with the subpoena.

On September 16, the LAPD failed to produce the documents or appear in court. The court issued a $50,000 bench warrant for the arrest of Mable Ling. The City of Los Angeles (petitioner) responded to the bench warrant by filing an ex parte motion to recall and quash the warrant and for an order to quash real party's subpoena duces tecum. The trial court rejected petitioner's argument that the *Pitchess* procedure applied to peace officer payroll records: "[I] don't think the payroll records need to be the subject of a *Pitchess* motion considering the security terms that the court provides so that the identity, social security numbers, et cetera is not made public." (Italics added.) The court also relied on the fiduciary duty owed divorcing spouses: "I'm saying that the personnel records are personnel records and payroll records are payroll records, has nothing to [do] with Mr. Williamson except how much money he earns. And in a fiduciary relationship Mrs. Williamson is entitled to it and why should a police officer be anywhere above the law in as we do it in other family law cases." Accordingly, the court denied the ex parte motion and signed the bench warrant for Mable Ling's arrest. It held the warrant to allow petitioner time to file a petition for writ of mandate with this court.

On October 3, petitioner filed a petition for writ of mandate requesting an immediate stay of the bench warrant, an order vacating the trial court's denial of the ex parte motion, and an order quashing real party's subpoena. This court issued a stay prohibiting the trial court from compelling the disclosure of Williamson's personnel files and the execution of the $50,000 bench warrant for the arrest of Mable Ling. We invited real party to file an informal response and address why the filing of a *Pitchess* motion would not provide an adequate remedy at law. We subsequently issued an order to show cause and invited real party to file a formal response and petitioner to reply. Following oral argument, we ordered supplemental briefing on two issues: (1) The application of certain principles announced in *Schnabel v. Superior Court* (1993) 5 Cal.4th 704 [21 Cal.Rptr.2d 200, 854 P.2d 1117], and (2) whether the case should be remanded to the trial court for the assessment of attorney fees and costs, notwithstanding both parties' failure to request them at the time of the hearing on the ex parte motion.

For reasons discussed below, the petition is denied. This court's stay as to the $50,000 bench warrant is to remain in full force and effect until issuance of the remittitur, at which time it is dissolved. The stay prohibiting disclosure

of Williamson's personnel files is dissolved upon the filing of this opinion. We leave the assessment of attorney fees and costs to the sound discretion of the trial court.

## II

## PROCEDURAL OBJECTIONS

Real party first claims petitioner pursued an improper procedural remedy in filing an ex parte motion in response to the court's issuance of a bench warrant. We agree. In general, the procedural remedy against a defective subpoena duces tecum that calls for privileged matter is a motion to quash, vacate, recall, or modify the subpoena. (Code Civ. Proc., § 1987.1; see also 2 Witkin, Cal. Evidence (4th ed. 2000) Discovery, §§ 12, 226, pp. 864–866, 1047–1048.) Petitioner failed to appear as directed and, after the issuance of a $50,000 bench warrant for Mable Ling, filed an ex parte motion to quash. A properly noticed motion to quash heard on or before the date and time specified would have been the appropriate vehicle for challenging real party's subpoena.

But real party is no gleaming example of how to follow proper civil procedure. Real party directed her subpoena to the "City of Los Angeles Controller" or the custodian of records. Mable Ling received the subpoena, but she is a clerk typist for the LAPD. Code of Civil Procedure section 1987.3 requires service be made on the "custodian of records or other qualified witness." (See also Evid. Code, § 1560, subd. (b).) Ling's capacity to accept the subpoena is unclear from this record. If she received it in her individual capacity, the court's $50,000 bench warrant is void. (See *Chapman v. Superior Court* (1968) 261 Cal.App.2d 194, 197 [67 Cal.Rptr. 842].) In addition, it is not clear the City of Los Angeles Controller is the custodian of records for every document requested by real party. Nevertheless, these are not jurisdictional issues. Therefore, we consider the merits of the petition.

## III

## BACKGROUND

As to the merits of the petition, it is important to briefly discuss the history of the *Pitchess* procedure and the interplay between several statutes to understand the nature of the parties' respective positions.

In *Pitchess, supra,* 11 Cal.3d at p. 534, a criminal defendant was one of a group of people charged with battery against four deputy sheriffs. The Sheriff of Los Angeles County sought a writ of mandate to prevent a criminal

defendant from discovering evidence of the complaining witnesses' propensity for violence. (*Ibid.*) The Supreme Court discussed the fundamental right of a criminal defendant to a fair trial, which included the right to access information that might be relevant to a potential defense, and the absence of statutory guidelines for discovery in criminal cases. (*Id.* at pp. 535–536.) The high court concluded that trial courts have wide discretion in allowing peace officer personnel files to be discovered after a "defendant demonstrate[s] sufficient good cause under the appropriate standards of criminal procedure, as developed in case authority, to warrant the trial court in compelling discovery." (*Id.* at p. 538.)

In response to *Pitchess*, allegations surfaced that police departments across the state were disposing of potentially damaging records to protect the officers' privacy. In 1978, the Legislature codified the privilege and developed procedures to protect the privacy interest of peace officers in their personnel records.[2] "The report by the Senate Committee on the Judiciary indicates that the main purpose of the 1978 legislation (Sen. Bill No. 1436) was to curtail the practice of record shredding and discovery abuses which allegedly occurred in the wake of the California Supreme Court's decision in *Pitchess* [citation]." (*San Francisco Police Officers' Assn. v. Superior Court* (1988) 202 Cal.App.3d 183, 189 [248 Cal.Rptr. 297].) The legislative purpose behind the enactment of Evidence Code sections 1043 and 1045 and Penal Code sections 832.7 and 832.8 was the protection of peace officer personnel records from "random discovery by defendants asserting self-defense to charges of criminal assault upon a police officer." (*San Francisco Police Officers' Assn. v. Superior Court* (1988) 202 Cal.App.3d at p. 190.)

Pursuant to Evidence Code sections 1043 and 1045, a party seeking personnel records, or information contained in those records, must follow a specific discovery procedure. The party requesting discovery must file and serve the motion 21 days before the hearing (Code Civ. Proc., § 1005), and give written notice to the governmental agency housing the records. (Evid. Code, § 1043, subd. (a).) The governmental agency must notify the individual whose records are sought. (*Ibid.*) The motion must include a description of the type of proceeding in which the discovery is sought, the identification of the person seeking the records, the name of the peace officer whose records are being sought, the identity of the governmental agency that houses the records, and the time and place the motion shall be heard. (Evid. Code, § 1043, subd. (b)(1).) It must also include "[a] description of the type of records or information sought" and include "[a]ffidavits showing good cause for discovery or disclosure sought, setting forth the materiality thereof to the

---

[2] The statutes also refer to "custodial officers" as defined in Penal Code section 831.5. For clarity, we have referred to the privilege as it applies to peace officers. Nevertheless, our holding would apply equally to custodial officers.

subject matter involved in the pending litigation and stating upon reasonable belief that the governmental agency identified has the records or information from the records." (Evid. Code, § 1043, subd. (b)(2), (3).)

At the hearing on the motion, the trial court conducts an in camera review of the personnel files, pursuant to Evidence Code section 915. (Evid. Code, § 1045, subd. (b).) Evidence Code section 1045, subdivision (b) directs the court to exclude from discovery certain specific categories of information, including citizen complaints over five years old, and if sought in conjunction with a criminal trial, "conclusions of any officer investigating a complaint filed pursuant to Section 832.5 of the Penal Code,"[3] and "facts sought to be disclosed that are so remote as to make disclosure of little or no practical benefit." (Evid. Code, § 1045, subd. (b)(3).) In cases where personnel information is disclosed, "the court may make any order which justice requires to protect the officer or agency from unnecessary annoyance, embarrassment or oppression" (Evid. Code, § 1045, subd. (d)), and must order "that the records disclosed or discovered may not be used for any purpose other than a court proceeding pursuant to applicable law." (Evid. Code, § 1045, subd. (e).)

## IV

## PAYROLL RECORDS ARE "PERSONNEL RECORDS"

The procedure described applies to peace officer personnel records or information contained in those records. Specifically, Penal Code section 832.7, subdivision (a), provides: "Peace officer ... personnel records and records maintained by any state or local agency pursuant to Section 832.5, or information obtained from these records, are confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code."

Penal Code section 832.8 defines "personnel records" as "any file maintained under that individual's name by his or her employing agency and containing records relating to any of the following: [¶] (a) Personal data, including marital status, family members, educational and employment history, home addresses, or similar information. [¶] (b) Medical history. [¶] (c) Election of employee benefits. [¶] (d) Employee advancement, appraisal, or discipline. [¶] (e) Complaints, or investigations of complaints, concerning an event or transaction in which he or she participated, or which he or she perceived, and pertaining to the manner in which he or she performed his or

---

[3] Penal Code section 832.5 governs the investigation of citizen complaints against peace officers, and the retention and maintenance of, and access to, records generated by such investigations.

her duties. [¶] (f) Any other information the disclosure of which would constitute an unwarranted invasion of personal privacy."

Petitioner contends payroll information qualifies as "personal data" or "employment history" under subdivision (a), or, in the alternative, under subdivision (f)'s catchall language. Real party argues that since the term "payroll records" does not appear in Penal Code section 832.8, such records are not covered by any provision of the statute. While we disagree with petitioner's assertion that payroll records are subsumed within the definition provided in subdivision (a), we find merit in petitioner's alternative argument.

True, the term "payroll records" does not appear in the statute. However, "[o]ur role in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citation.] Because the statutory language is generally the most reliable indicator of that intent, we look first at the words themselves, giving them their usual and ordinary meaning. [Citation.] We do not, however, consider the statutory language in isolation, but rather examine the entire substance of the statute in order to determine the scope and purpose of the provision, construing its words in context and harmonizing its various parts. [Citation.]" (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1040 [130 Cal.Rptr.2d 672, 63 P.3d 228]; see also *Estate of Griswold* (2001) 25 Cal.4th 904, 910–911 [108 Cal.Rptr.2d 165, 24 P.3d 1191].) " 'The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.] Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation. [Citation.]' " (*People v. Tabb* (1991) 228 Cal.App.3d 1300, 1307 [279 Cal.Rptr. 480].)

In *Garden Grove Police Department v. Superior Court* (2001) 89 Cal.App.4th 430, 434 [107 Cal.Rptr.2d 642] (*Garden Grove*), we held a peace officer's birth date, although not specifically enumerated in this section, would be "personal data" within the meaning of Penal Code section 832.8, subd. (a). We explained: "The Legislature's inclusion of the term 'similar information' signifies its intent to include other things relat[ed] to the listed items, such as birth dates and Social Security numbers, which are not expressly listed." (*Garden Grove, supra,* 89 Cal. App.4th at p. 434.) However, payroll records, unlike birth dates, do not constitute "similar information" to the other data listed in Penal Code section 832.8, subdivision (a).

Penal Code section 832.8, subdivision (a) includes, "marital status, family members, educational and employment history, [and] home address." However, this presents a list of general pieces of information that might be found

on any resume or job application, i.e., the subdivision (a) list would include basic status or identifying information about the employee as he or she came to the job. It does not include any information that would be specific to the current job, such as would be found in payroll information. Information that is specific to the employee's current status as a peace officer would not be "similar information" to the other information covered by the statute.

However, we are persuaded the *Garden Grove* analysis applies with respect to Penal Code section 832.8, subdivision (f). In *Garden Grove*, we concluded that a birth date would also qualify as personnel records under subdivision (f) because the disclosure of it or Social Security numbers "could lead to other sensitive information." (*Garden Grove, supra,* 89 Cal.App.3d at p. 434.) A person's payroll information itself is sensitive information and would be the type of information to fall within the plain language of the inclusive phrase, "information the disclosure of which would constitute an unwarranted invasion of personal privacy." (Pen. Code, § 832.8, subd. (f).)

Payroll information is personal. Ask any ordinary reasonable person if he or she would want their payroll information routinely disclosed to parties involved in litigation and one would hear a resounding, "No." (See *Braun v. City of Taft* (1984) 154 Cal.App.3d 332, 343 [201 Cal.Rptr. 654] [job classification and salary are deemed " 'personal and capable of causing embarrassment' "].) Even though the pay scale of public employees is generally a matter of public record, it is quite a different thing to know with precision another person's salary, selection of benefits, and potential retirement income. Few records are deemed more personal. Of all records kept by employers, it is the disclosure of payroll records that would constitute one of the greatest "unwarranted invasions of personal privacy." We conclude payroll records are subsumed within Penal Code section 832.8, subdivision (f)'s catchall provision.[4]

V

EVIDENCE CODE SECTIONS 1043 AND 1045 DO NOT APPLY

Petitioner further claims Evidence Code sections 1043 and 1045 are applicable in family law proceedings just as in criminal or civil cases involving peace officer personnel records. Real party argues the fiduciary duty spouses owe to one another to disclose financial information in a marital dissolution proceeding creates an exception in this case to the special

---

[4] It also appears some of the requested information may fall under one or more of the remaining subdivisions of Penal Code section 832.8. We limit our discussion to those issues raised by the parties. Our resolution of this matter applies equally to any information described in the statute, regardless of the subdivision.

discovery requirements. Additionally, real party contends enforcement of the *Pitchess* procedure would result in a waste of judicial and private resources since the peace officer's spouse would be entitled to obtain payroll records. We find real party's arguments persuasive.

Evidence Code sections 1043 and 1045, which have been discussed at length, are generally applicable statutes requiring all persons seeking peace officer personnel records to comply with the described procedure. The *Pitchess* procedure is applicable in civil cases. (*City of Hemet v. Superior Court* (1995) 37 Cal.App.4th 1411, 1425 [44 Cal.Rptr.2d 532]; *County of Los Angeles v. Superior Court* (1990) 219 Cal.App.3d 1605, 1611 [269 Cal.Rptr. 187].) However, the Family Code clearly expresses the Legislature's intent to require financial disclosure as part of the fiduciary duty owed spouses obtaining dissolution of their marriage.

"The Legislature finds and declares the following: [¶] (a) It is the policy of the State of California (1) to marshal, preserve, and protect community and quasi-community assets and liabilities that exist at the date of separation so as to avoid dissipation of the community estate before distribution, (2) to ensure fair and sufficient child and spousal support awards, and (3) to achieve a division of community and quasi-community assets and liabilities on the dissolution or nullity of marriage or legal separation of the parties as provided under California law. [¶] (b) Sound public policy further favors the reduction of the adversarial nature of marital dissolution and the attendant costs by fostering full disclosure and cooperative discovery. [¶] (c) In order to promote this public policy, a full and accurate disclosure of all assets and liabilities in which one or both parties have or may have an interest must be made in the early stages of a proceeding for dissolution of marriage or legal separation of the parties, regardless of the characterization ...." (Fam. Code, § 2100.) Further codifying the duty to disclose is Family Code section 2102 which states: "(a) From the date of separation to the date of the distribution of the community or quasi-community asset or liability in question, each party is subject to the standards provided in Section 721,[5] as to all activities that affect the assets and liabilities of the other party, including, but not

---

[5] Family Code section 721 provides, "(a) Subject to subdivision (b), either husband or wife may enter into any transaction with the other, or with any other person, respecting property, which either might if unmarried. [¶] (b) Except as provided in Sections 143, 144, 146, 16040, and 16047 of the Probate Code, in transactions between themselves, a husband and wife are subject to the general rules governing fiduciary relationships which control the actions of persons occupying confidential relations with each other. This confidential relationship imposes a duty of the highest good faith and fair dealing on each spouse, and neither shall take any unfair advantage of the other. This confidential relationship is a fiduciary relationship subject to the same rights and duties of nonmarital business partners, as provided in Sections 16403, 16404, and 16503 of the Corporations Code, including, but not limited to, the following: [¶] (1) Providing each spouse access at all times to any books kept regarding a transaction for the purposes of inspection and copying. [¶] (2) Rendering upon request, true and full information

limited to, the following activities: [¶] (1) The accurate and complete disclosure of all assets and liabilities in which the party has or may have an interest or obligation and all current earnings, accumulations, and expenses, including an immediate, full, and accurate update or augmentation to the extent there have been any material changes. [¶] (2) The accurate and complete written disclosure of [all assets and liabilities] ...." (Fam. Code, § 2102, fn. added.)

The relevant sections in the Evidence, Penal, and Family Codes are part of the same system of laws governing the issue in this case. " 'In construing [a statute] it is necessary to harmonize its provisions with preexisting and companion provisions of the system of laws of which it is a part ....' [Citation.]" (*County of Tulare v. Campbell* (1996) 50 Cal.App.4th 847, 853 [57 Cal.Rptr.2d 902].) " 'The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.] Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation. [Citation.]' " (*People v. Tabb, supra,* 228 Cal.App.3d at p. 1307, quoting *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386–1387 [241 Cal.Rptr. 67, 743 P.2d 1323].)

The parties disagree about how we should harmonize the statutes in this particular discovery matter. Essentially the disagreement boils down to whether there should be a judicially created exception to the *Pitchess* procedure for the spouse of a peace officer in the midst of a marital dissolution. If we hold that there is an exception to the Evidence Code requirements in this case, as real party suggests, then the requirements of the Family Code are satisfied. The Evidence Code procedure will not literally be complied with; however, the *intent* of the law will be fulfilled.

The purposes of Evidence Code sections 1043 and 1045 are, (1) to make sure that the discovering party has good cause to compel disclosure of the peace officer's personnel file, and (2) to filter out irrelevant or extraneous information in order to preserve the peace officer's privacy. As originally contemplated and most frequently used, these procedures protect a peace officer's privacy interest in his or her personnel records in the context of a criminal case. In the specific case of discovery in a marital dissolution, the spouse of a peace officer would be able to demonstrate good cause to seek the

of all things affecting any transaction which concerns the community property. Nothing in this section is intended to impose a duty for either spouse to keep detailed books and records of community property transactions. [¶] (3) Accounting to the spouse, and holding as a trustee, any benefit or profit derived from any transaction by one spouse without the consent of the other spouse which concerns the community property."

peace officer's payroll records. Full disclosure of all financial information is essential in determining the equitable division of assets and calculating spousal and child support. Furthermore, there will be little need to filter out any irrelevant, extraneous, or unfairly prejudicially information. A peace officer's spouse is probably already aware of any matter that would be deemed confidential in other settings.

In contrast to real party's position, which accomplishes the letter of one code and the spirit of the other, petitioner argues that there should be no exception to the *Pitchess* procedure in family law cases. Petitioner would require strict adherence to the Evidence Code requirements, even though this adherence would violate the legislative mandate of the Family Code and the public policy concerns advanced by it. Further, strict compliance with the *Pitchess* procedure in marital dissolution cases would not serve any useful purpose.

■ A divorcing spouse will invariably demonstrate good cause for disclosure of payroll information. We are to avoid "an interpretation [of statutes] which leads to absurd consequences ...." (*County of Tulare v. Campbell, supra,* 50 Cal.App.4th at p. 853.) And, the consequences of forcing the spouse of a peace officer to comply with the *Pitchess* procedure would be absurd. It appears petitioner failed to count the cost in terms of public and private resources in litigating a *Pitchess* motion every time a spouse seeks a peace officer's payroll records in family court. In an era of fiscal conservatism, it is a waste of these resources to force both parties to go through a complex motion procedure to disclose relevant information when the outcome is generally assured. The end result of petitioner's interpretation is wasted private and public funds and time, and judicial resources. The Family Code expressly discourages this type of wasted effort: "Sound public policy further favors the reduction of the adversarial nature of marital dissolution and the attendant costs by fostering full disclosure and cooperative discovery." (Fam. Code, § 2100, subd. (b).)

Another appellate court had no difficulty with a similar question. In *Miller v. Superior Court* (1977) 71 Cal.App.3d 145 [139 Cal.Rptr. 521], a husband refused to disclose federal and state tax records when his former wife sought over $6,000 in unpaid child support. The appellate court briefly analyzed Revenue and Taxation Code section 19282 and the "privileged nature of tax returns ...." (*Id.* at p. 147.) It concluded, "the time has arrived when a policy favoring the confidentiality of tax returns must give way to the greater public policy of enforcing child support obligations." (*Id.* at p. 149.)

A central purpose of a marital dissolution proceeding is court oversight of property distribution and/or child and spousal support. Accordingly, as in *Miller,* the time has come for the policy protecting a peace officer's privacy

interest in his or her personnel records to give way to the Family Code's requirements of full financial disclosure during marital dissolution proceedings. (See *Alford v. Superior Court, supra,* 29 Cal.4th at p. 1063 (conc. & dis. opn. of Moreno, J.) ["the *Pitchess* pendulum has swung too far in favor of police privacy rights and against the disclosure of relevant evidence."].)[6]

We find support for our conclusion in certain principles announced in *Schnabel v. Superior Court, supra,* 5 Cal.4th 704. In *Schnabel,* the Supreme Court considered the relative rights of a spouse attempting to obtain relevant information regarding the distribution of community property and the privacy rights of an otherwise uninvolved third party. In deciding the case, the court announced several important discovery principles to be applied in marital dissolution proceedings.

First, financial information about the value of community assets is "clearly relevant to the spouse's interests in obtaining a fair division of those assets and fair attorney fee and spousal support … awards." (*Schnabel v. Superior Court, supra,* 5 Cal.4th at p. 711.) Second, the Legislature codified this concept in Family Code section 2100, subdivision (a) (former Civil Code section 4800.11). Further, "In order to promote this public policy, a full and accurate disclosure of all assets and liabilities in which one or both parties have or may have an interest must be made in the early stages of a proceeding for dissolution of marriage or legal separation of the parties, regardless of the characterization as community or separate, together with a disclosure of all income and expenses of the parties. Moreover, each party has a continuing duty to immediately, fully, and accurately update and augment that disclosure to the extent there have been any material changes so that at the time the parties enter into an agreement for the resolution of any of these issues, or at the time of trial on these issues, each party will have a full and complete knowledge of the relevant underlying facts." (Fam. Code, § 2100, subd. (c).)

The *Pitchess* procedure is the product of a judicially created doctrine. (*City of Los Angeles v. Superior Court* (2002) 29 Cal.4th 1, 9 [124 Cal.Rptr.2d 202, 52 P.3d 129].) It is not an absolute evidentiary privilege. ■ There are limitations to the privacy right granted peace officers over their personnel records. ■ In marital dissolution cases, payroll records are material to the just disposition of community property. ■ In fact, based on the analysis in *Schnabel,* and under community property law, real party has her

---

[6] Although not addressed by the parties and not relied on by this court in reaching its decision, principles of equal protection militate against granting unique rights to divorcing peace officers. (See generally *Skinner v. State of Oklahoma* (1942) 316 U.S. 535, 541 [86 L.Ed. 1655, 62 S.Ct. 1110]; see also 8 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 593, p. 44.)

own individual interest in determining the amount of separate, community and quasi-community property held by the community, which necessarily includes Williamson's salary, bonuses, benefits selections and retirement. (Fam. Code, § 760.)

On the other hand, Williamson's privacy concerns are protected by Code of Civil Procedure section 1985's requirement of a supporting affidavit demonstrating good cause for the production of the information described and specificity in the "exact matters or things desired to be produced ...." (Code Civ. Proc., § 1985, subd. (b).) The parties failed to provide an example of the form(s) real party is requesting. Consequently, we are at somewhat of a loss to determine what exact information petitioner seeks to protect. But in any given case, the trial court may exercise its discretion to exclude any information deemed unnecessary to the proceedings, or any that may place the peace officer at personal risk, or subject him or her to public ridicule. The court may conduct an in camera review upon proper showing (Evid. Code, § 915), and as noted by the trial court, records may be sealed from public view should appropriate circumstances arise. All things considered, there is no good reason to force the spouse of a peace officer to jump through the *Pitchess* hoop to obtain financial information he or she is entitled to by law.

## VI

### SANCTIONS

Real party and petitioner prayed for the assessment of attorney fees and costs. At oral argument, we invited further briefing on the issue with respect to the propriety of remanding the matter for the determination and assessment of attorney fees and costs in the lower court. Neither party requested fees and/or costs at the conclusion of the hearing on petitioner's ex parte motion. Nonetheless, we conclude a determination of attorney fees and costs may be appropriate.

Family Code section 271, subdivision (a) provides for, "the award of attorney[] fees and costs [where one party, or the party's attorney] on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys. An award of attorney[] fees and costs pursuant to this section is in the nature of a sanction."

Neither petitioner nor real party frustrated the policy of the law. Real party is entitled to the documents she seeks. Petitioner reasonably construed the various statutes involved and developed a broad policy to enforce those

provisions. As both parties acknowledge, this is a case of first impression. However, there is a party to the lower court proceedings who has frustrated the policy of the law.

Williamson received the standard waiver of rights form LAPD uses in marital dissolution proceedings. Had he signed this form at the earliest possible juncture, none of the subsequent legal steps need have been taken by either real party or petitioner, nor would the court have had to rule on the ex parte motion. The record discloses Blackman kept Williamson advised of the progress of the case, expected him to appear at the hearing on petitioner's ex parte motion, and repeatedly informed Williamson of his ability to waive any rights precluding petitioner's compliance with real party's subpoena. Apparently, peace officer spouses routinely sign the waiver form and go on about their business. For reasons not readily apparent in the record, Williamson pushed his status as a peace officer to the limit, to the detriment of the other parties and the court. However, he is not a party to these proceedings. Therefore, we leave it to the sound discretion of the trial court to determine if an assessment of attorney fees and costs against Williamson is appropriate.

## VII

## DISPOSITION

Petition for writ of mandate is denied. The trial court may consider an attorney fees award against Williamson for the added cost and delay he caused by refusing to sign a standard waiver form. This court's stay on the issuance of the $50,000 bench warrant for Mable Ling is to remain in full force and effect until issuance of the remittitur, at which time it is dissolved. The stay prohibiting disclosure of Williamson's personnel file is dissolved. We decline to award costs in the interests of justice. (Cal. Rules of Court, rule 56.4(a).)

Sills, P. J., and Rylaarsdam, J., concurred.