[No. A121575. First Dist., Div. Two. Apr. 23, 2010.]

ANDREW REYNARD BROWN, Plaintiff and Respondent, v.
GEORGE VALVERDE, as Director, etc., Defendant and Appellant.

## COUNSEL

Edmund G. Brown, Jr., Attorney General, Alicia Fowler, Assistant Attorney General, Miguel A. Neri, Fiel Tigno, David Carrillo and Jennifer G. Perkell, Deputy Attorneys General, for Defendant and Appellant.

Peter Goodman for Plaintiff and Respondent.

## OPINION

**RICHMAN, J.**—This appeal presents a single issue of law, an issue of first impression: in a Department of Motor Vehicles (DMV) administrative per se hearing, can a driver facing license suspension following arrest for driving under the influence seek discovery of confidential peace officer personnel records pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305] (*Pitchess*) and its statutory codifications? The superior court concluded the driver could, and issued a writ of mandate directing the administrative hearing officer to hear Andrew Reynard Brown's motion. We reverse, concluding that the *Pitchess* procedure has no place in a DMV administrative per se hearing, a conclusion compelled by the statutory scheme, its legislative history—indeed, by the very purpose of the administrative per se hearing.

### APPLICABLE STATUTORY SCHEMES

At the center of this appeal are two statutory schemes: the DMV administrative per se law (Veh. Code, § 13350 et seq.) and what has become known as *Pitchess* discovery (Evid. Code, §§ 1043, 1045; Pen. Code, §§ 832.7, 832.8). Before setting forth the factual background giving rise to the controversy, we summarize these two schemes.

#### A. *The DMV Administrative Per Se Law*

The statutory framework of the administrative per se law was described in detail in the leading case of *Lake v. Reed* (1997) 16 Cal.4th 448, 454–455 [65

Cal.Rptr.2d 860, 940 P.2d 311] (*Lake*), and recently reiterated in *MacDonald v. Gutierrez* (2004) 32 Cal.4th 150, 155–156 [8 Cal.Rptr.3d 48, 81 P.3d 975] (*MacDonald*): "Under the administrative per se law, the DMV must immediately suspend the driver's license of a person who is driving with .08 percent or more, by weight, of alcohol in his or her blood. [Citation.] The procedure is called 'administrative per se' because it does not impose criminal penalties, but simply suspends a person's driver's license as an administrative matter upon a showing the person was arrested for driving with a certain blood-alcohol concentration, without additional evidence of impairment. [Citation.] The express legislative purposes of the administrative suspension procedure are: (1) to provide safety to persons using the highways by quickly suspending the driving privilege of persons who drive with excessive blood-alcohol levels; (2) to guard against erroneous deprivation by providing a prompt administrative review of the suspension; and (3) to place no restriction on the ability of a prosecutor to pursue related criminal actions. [Citations.]

"The administrative per se laws were deemed necessary due to the time lag that often occurs between an arrest and a conviction for driving while intoxicated or with a prohibited blood-alcohol concentration. During this interim period, arrestees who would eventually be convicted of an intoxication-related driving offense were permitted to continue driving and, possibly, endangering the public. Moreover, without administrative per se laws, persons with extremely high blood-alcohol concentration levels at the time of arrest could escape license suspension or revocation by plea bargaining to lesser crimes or entering pretrial diversion. Thus, by providing for an administrative license suspension prior to the criminal proceeding, the law affords the public added protection. [Citation.]"

■ The administrative per se procedure is, in short, an expedited process, and for good reasons, as explained in *Bell v. Department of Motor Vehicles* (1992) 11 Cal.App.4th 304, 312 [13 Cal.Rptr.2d 830]: "The need for the administrative per se statutes arose from the fact that '[t]he legal process leading to imposition of a suspension sometimes [took] years from the time of arrest.' [Citation.] 'Many drivers with high chemical test results fail[ed] to have sanctions taken against their driving privilege because of reduction in charges as the result of "plea-bargaining" or pre-trial diversion programs.' [Citation.] In enacting the administrative per se law, the Legislature intended to establish 'an expedited driver's license suspension system' [citations] that would 'reduce court delays. The suspension will be swift and certain and will be more effective as a deterrent . . . .' [Citation.]"

This is how the procedure works. When a driver is arrested for driving under the influence and is determined to have a prohibited blood-alcohol content (BAC), the arresting officer or the DMV serves the driver with a

"notice of [an] order of suspension or revocation" of his or her driver's license, advising that the suspension will become effective 30 days from the date of service. (Veh. Code, §§ 13353.2, subds. (b) & (c), 13353.3, subd. (a).) The notice explains the driver's right to an administrative hearing before the effective date of the suspension if the driver requests a hearing within 10 days of receipt of the notice. (*Id.*, §§ 13353.2, subd. (c), 13558, subd. (b).)

After the driver is served with the notice, the DMV automatically reviews the merits of the suspension to determine whether the peace officer had reasonable cause to believe that the driver had been driving a motor vehicle under the influence of alcohol, the driver was placed under arrest, and the driver had a BAC of 0.08 percent or more at the time he or she was driving.[1] (Veh. Code, §§ 13558, subd. (c)(2), 13557, subd. (b)(2).) This determination must be made prior to the effective date of the suspension, although the DMV may dispense with the automatic review if the driver requests a hearing. (*Id.*, § 13557, subds. (c), (e).)

The administrative per se hearing is presided over by either the director of the DMV, a hearing board, or in the usual case—and as here—a hearing officer. (Veh. Code, § 14104.2, subd. (a) ["Any hearing shall be conducted by the director or by a hearing officer or hearing board appointed by him or her from officers or employees of the [DMV]."]; *Reirdon v. Director of Dept. of Motor Vehicles* (1968) 266 Cal.App.2d 808, 811 [72 Cal.Rptr. 614]; *Serenko v. Bright* (1968) 263 Cal.App.2d 682, 690 [70 Cal.Rptr. 1]; *Spurlock v. Department of Motor Vehicles* (1969) 1 Cal.App.3d 821, 829 [82 Cal.Rptr. 42].) Hearing officers are typically DMV employees who need not have any legal training whatever. Thus, hearings conducted by such hearing officers are in contrast to other proceedings arising under the Administrative Procedure Act, where the agencies employ administrative law judges to preside over the proceedings. (Gov. Code, § 11502; 9 Witkin, Cal. Procedure (5th ed. 2008) Administrative Proceedings, § 58, p. 1176.) Such administrative law judges do have legal training: they must have been admitted to practice law in California for at least five years and have any additional qualifications prescribed by the State Personnel Board. (Gov. Code, § 11502, subd. (b).)

The sole task of the hearing officer is to determine whether the arresting officer had reasonable cause to believe the person was driving, the driver was arrested, and the person was driving with a BAC of 0.08 percent or higher. If the hearing officer determines that the evidence establishes these three facts

---

[1] Different BAC levels apply to drivers under 21 years of age. (Veh. Code, § 13557, subd. (b)(2)(C).)

by a preponderance of the evidence, the license will be suspended.[2] (Veh. Code, §§ 13558, subd. (c)(1), 13557, subd. (b)(2), 14104.2, subd. (a); see generally *Lake, supra,* 16 Cal.4th at pp. 455–456; *Gikas v. Zolin* (1993) 6 Cal.4th 841, 846–847 [25 Cal.Rptr.2d 500, 863 P.2d 745].)

The procedure is civil in nature and is independent from the criminal prosecution that might ultimately result in the imposition of penalties through the criminal justice system.

### B. Pitchess *Discovery*

In 1974, our Supreme Court decided *Pitchess, supra,* 11 Cal.3d 531. There, defendant Caesar Echeveria was, along with others, charged with battery against four deputy sheriffs. Echeveria moved for discovery of the deputies' personnel files, seeking records showing prior complaints against the deputies, in order to establish at trial that he acted in self-defense to their use of excessive force. The superior court granted Echeveria's motion, and Sheriff Pitchess sought a writ of mandate to quash a subpoena requiring production of the confidential records. The Supreme Court denied the writ, holding that a criminal defendant who is being prosecuted for battery on a peace officer is entitled to discovery of personnel records to show that the officer had a history of using excessive force and that defendant acted in self-defense. (*Id.* at pp. 535–537.)

Following the *Pitchess* decision, allegations surfaced that law enforcement agencies were destroying records to protect the privacy of officers whose personnel files contained potentially damaging information. (*City of Los Angeles v. Superior Court* (2003) 111 Cal.App.4th 883, 889 [3 Cal.Rptr.3d 915].) At the same time concerns were expressed that defendants were abusing *Pitchess* discovery by conducting fishing expeditions into arresting officers' files. (*San Francisco Police Officers' Assn. v. Superior Court* (1988) 202 Cal.App.3d 183, 189–190 [248 Cal.Rptr. 297].) In 1978, the California Legislature addressed these concerns by codifying the "privileges and procedures" of *Pitchess* motions, with the enactment of Evidence Code sections 1043 and 1045 and Penal Code sections 832.7 and 832.8. (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 81 [260 Cal.Rptr. 520, 776 P.2d 222].)

The procedures established by the 1978 statutory scheme have been frequently summarized by California courts. The early exposition in *City of Santa Cruz v. Municipal Court, supra,* 49 Cal.3d 74, is illustrative, and we quote it at length here:

---

[2] With certain exceptions, the suspension is for four months if the driver had a clean driving record (Veh. Code, § 13353.3, subd. (b)(1)), and for one year if the driver had a drunk driving conviction within the prior 10 years (Veh. Code, § 13353.3, subd. (b)(2)).

"The Penal Code provisions define 'personnel records' (Pen. Code, § 832.8) and provide that such records are 'confidential' and subject to discovery only pursuant to the procedures set forth in the Evidence Code. (Pen. Code, § 832.7.) Evidence Code sections 1043 and 1045 set out the procedures for discovery in detail. As here pertinent, [Evidence Code] section 1043, subdivision (a) requires a written motion and notice to the governmental agency which has custody of the records sought, and subdivision (b) provides that such motion shall include, inter alia, '(2) A description of the type of records or information sought; and [¶] (3) Affidavits showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation and stating upon reasonable belief that such governmental agency identified has such records or information from such records.'

"A finding of 'good cause' under [Evidence Code] section 1043, subdivision (b) is only the *first* hurdle in the discovery process. Once good cause for discovery has been established, [Evidence Code] section 1045 provides that the court shall then examine the information 'in chambers' in conformity with [Evidence Code] section 915 (i.e., out of the presence of all persons except the person authorized to claim the privilege and such other persons as he or she is willing to have present), and shall *exclude* from disclosure several enumerated categories of information, including: (1) complaints more than five years old, (2) the 'conclusions of any officer investigating a complaint . . .' and (3) facts which are 'so remote as to make disclosure of little or no practical benefit.' ([Evid. Code,] § 1045, subd. (b).)

"In addition to the exclusion of specific categories of information from disclosure, [Evidence Code] section 1045 establishes general criteria to guide the court's determination and insure that the privacy interests of the officers subject to the motion are protected. Where the issue in litigation concerns the policies or pattern of conduct of the employing agency, the statute *requires* the court to 'consider whether the information sought may be obtained from other records . . . which would not necessitate the disclosure of individual personnel records.' ([Evid. Code,] § 1045, subd. (c).) The law further provides that the court may, in its discretion, 'make *any order which justice requires* to protect the officer or agency from unnecessary annoyance, embarrassment or oppression.' ([Evid. Code,] § 1045, subd. (d), italics added.) And, finally, the statute mandates that in any case where disclosure is permitted, the court '*shall* . . . order that the records disclosed or discovered shall not be used for any purpose other than a court proceeding pursuant to applicable law.' ([Evid. Code,] § 1045, subd. (e), italics added.)

"As statutory schemes go the foregoing is a veritable model of clarity and balance. [Evidence Code s]ection 1043 clearly requires a showing of 'good

cause' for discovery in two general categories: (1) the 'materiality' of the information or records sought to the 'subject matter involved in the pending litigation,' and (2) a 'reasonable belief' that the governmental agency has the 'type' of information or records sought to be disclosed. ([Evid. Code,] § 1043, subd. (b).)

"The relatively low threshold for discovery embodied in [Evidence Code] section 1043 is offset, in turn, by [Evidence Code] section 1045's protective provisions which: (1) explicitly 'exclude from disclosure' certain enumerated categories of information ([Evid. Code,] § 1045, subd. (b)); (2) establish a procedure for in camera inspection by the court prior to any disclosure ([Evid. Code,] § 1045, subd. (b)); and (3) issue a forceful directive to the courts to consider the privacy interests of the officers whose records are sought and take whatever steps 'justice requires' to protect the officers from 'unnecessary annoyance, embarrassment or oppression.' ([Evid. Code,] § 1045, subds. (c), (d) & (e).)

"The statutory scheme thus carefully balances two directly conflicting interests: the peace officer's just claim to confidentiality, and the criminal defendant's equally compelling interest in all information pertinent to his defense. The relatively relaxed standards for a showing of good cause under [Evidence Code] section 1043, subdivision (b)—'materiality' to the subject matter of the pending litigation and a 'reasonable belief' that the agency has the type of information sought—insure the production for inspection of all potentially relevant documents. The in camera review procedure and disclosure guidelines set forth in [Evidence Code] section 1045 guarantee, in turn, a balancing of the officer's privacy interests against the defendant's need for disclosure. As a further safeguard, moreover, the courts have generally refused to disclose verbatim reports or records of any kind from peace officer personnel files, ordering instead . . . that the agency reveal only the name, address and phone number of any prior complainants and witnesses and the dates of the incidents in question. [Citations.]" (*City of Santa Cruz v. Municipal Court, supra,* 49 Cal.3d at pp. 81–84; see also *Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1037–1039 [130 Cal.Rptr.2d 672, 63 P.3d 228]; *People v. Mooc* (2001) 26 Cal.4th 1216, 1225–1227 [114 Cal.Rptr.2d 482, 36 P.3d 21]; *City of Los Angeles v. Superior Court, supra,* 111 Cal.App.4th at pp. 889–890.)

That statutory scheme may be, as the Supreme Court described, a "model of clarity and balance." (*City of Santa Cruz v. Municipal Court, supra,* 49 Cal.3d at p. 83.) It is not, however, a model of the " 'swift and certain' " procedure (*Bell v. Department of Motor Vehicles, supra,* 11 Cal.App.4th at p. 312) or " 'prompt administrative review' " (*Lake, supra,* 16 Cal.4th at p. 454) that is the essence of the administrative per se hearing. Quite the contrary.

To seek to obtain the officer's records, Evidence Code section 1043, subdivision (a), requires the moving party to serve notice of the motion on the parties and the governmental agency in possession of the records. Such notice must comply with Code of Civil Procedure section 1005, subdivision (b), which requires at least 16 days' notice of the motion, plus five additional days for service by mail. The agency must then notify the law enforcement officer whose records are the subject of the motion. (Evid. Code, § 1043, subd. (a).) After opposition and any reply (Code Civ. Proc., § 1005, subd. (b)), the court then conducts a hearing to determine whether good cause exists for disclosure of the requested records. (*City of Santa Cruz v. Municipal Court, supra,* 49 Cal.3d at pp. 82–83.) This is what a leading treatise calls the first step of the two-step *Pitchess* discovery process. (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2009) ¶¶ 8:127.1 to 8:127.10, pp. 8C-23 to 8C-24 (rev. # 1, 2009).)

If the court finds good cause, the second step involves an in camera review of the personnel records. (*Slayton v. Superior Court* (2006) 146 Cal.App.4th 55, 61 [52 Cal.Rptr.3d 731].) There, the court, in the presence of the custodian of records, a court reporter, and sometimes the attorney for the agency and the officer, personally examines the potentially relevant records in chambers. (Evid. Code, § 915, subd. (b); *People v. Mooc, supra,* 26 Cal.4th at pp. 1226, 1229.) As explained in *Mooc,* "The custodian should be prepared to state in chambers and for the record what other documents (or category of documents) not presented to the court were included in the complete personnel record, and why those were deemed irrelevant or otherwise nonresponsive to the defendant's *Pitchess* motion. A court reporter should be present to document the custodian's statements, as well as any questions the trial court may wish to ask the custodian regarding the completeness of the record. [Citation.] [¶] The trial court should then make a record of what documents it examined before ruling on the *Pitchess* motion. . . . Of course, to protect the officer's privacy, the examination of documents and questioning of the custodian should be done in camera in accordance with the requirements of Evidence Code section 915, and the transcript of the in camera hearing and all copies of the documents should be sealed." (*People v. Mooc, supra,* 26 Cal.4th at p. 1229, fn. omitted.)

If the court determines there are personnel records that are "relevant to the subject matter involved in the pending litigation," it orders the records produced and the custodian of records must then prepare them for production. (Evid. Code, § 1045, subd. (a); see *People v. Mooc, supra,* 26 Cal.4th at p. 1226.)

With this understanding of the pertinent procedures, we turn to the events leading up to the *Pitchess* motion in question.

## BACKGROUND

According to the sworn police report filed by California Highway Patrol (CHP) Officer J.P. Desmarais, in the early morning hours of June 3, 2006, he observed Brown driving on a freeway in Oakland. Brown was following too closely behind the car in front of him and having difficulty maintaining his lane, veering across the line into the next lane and then jerking back into his own. Officer Desmarais initiated a traffic stop and, as he approached, could smell alcohol emanating from the car. Brown, whose eyes were red and watery, admitted he had been drinking, claiming he had two large beers a few hours earlier. After Brown failed several standard field sobriety tests, Officer Desmarais arrested him for driving under the influence of alcohol, and transported him to the CHP office, where chemical tests performed one minute apart confirmed Brown's BAC to be 0.08 percent and 0.09 percent.[3]

Officer Desmarais served Brown with a notice of order of suspension, advising that the DMV intended to suspend his license in 30 days and that he could challenge the suspension by timely requesting an administrative per se hearing. Brown requested such a hearing and, although the arrest occurred on June 3, 2006, for reasons not evident from the record the hearing did not begin until September 29, 2006, and did not conclude until November 28, 2006. Brown retained his driving privileges the entire time.

On February 1, 2007, the DMV issued its notification of findings and decision. The hearing officer found that Officer Desmarais had probable cause to initiate a traffic stop, observed objective symptoms indicating Brown was intoxicated, had reasonable cause to believe Brown was driving while under the influence of alcohol, and made a lawful arrest. The hearing officer also found that two chemical tests confirmed Brown had a BAC of 0.08 percent and 0.09 percent shortly after the arrest. The hearing officer rejected Brown's argument that Officer Desmarais failed to observe him for 15 minutes prior to the breath test, stating, "Greater weight is given to the officer's testimony in that he had good recall, he was straightforward, and had no obvious breaks in testimony." The notification informed Brown that his license would be suspended effective February 10, 2007, through February 9, 2008, a one-year suspension, indicating that Brown had a prior conviction for drunk driving. (See fn. 2, *ante.*)

On February 8, 2007, Brown petitioned the superior court for a writ of mandate, seeking an order compelling the DMV to set aside the license suspension. He also moved to augment the record of the administrative per se

---

[3] A blood-alcohol concentration of 0.08 percent or greater is a ground for suspension of the driving privilege. (Veh. Code, § 13353.2.)

hearing, arguing that dispatch records from the night of his arrest demonstrated that Officer Desmarais's testimony was unreliable. Brown claimed he could not have produced the records at the administrative per se hearing because he could not have anticipated that the officer's testimony would be inaccurate.

On July 9, 2007, the trial court granted Brown's motion to augment, concluding that the dispatch records and other new evidence were relevant and in the exercise of reasonable diligence could not have been produced at the hearing. The trial court also granted Brown's writ petition in part,[4] concluding that in light of the new evidence, the DMV's February 1, 2007 findings and decision should be set aside and the administrative hearing reconvened to allow the hearing officer to consider the new evidence. As to Officer Desmarais's testimony, the trial court explained its concerns this way: "There are several conflicts between the testimony of Officer Desmarais and that of Petitioner that raise some doubt as to the veracity and/or memory of Officer Desmarais as to the arrest in question. For example, the parties' testimony conflicts as to which direction the parties were traveling on I-580 prior to taking the I-24 interchange at the time Officer Desmarais was following Petitioner's vehicle. There is also a conflict as to whether Petitioner had informed Officer Desmarais that he suffers from several physical impairments in the feet, legs, ankles or hips that could affect his performance on the field sobriety tests. Further, the officer's testimony that it took 25 minutes to drive from the location of the arrest to the CHP office in Oakland, and that he administered the breath tests to Petitioner immediately upon arrival, conflicts with Petitioner's testimony that the drive was much shorter and that he was left in a room alone for 5 to 7 minutes after arriving at the CHP office before the tests were administered. While the hearing officer is entitled to find one witness or the other more credible on these and other matters that might affect her findings, the hearing officer should do so only after taking into account the radio dispatch records and other evidence admitted at the hearing after remand."

The administrative per se hearing reconvened on September 7, 2007. At the outset, the hearing officer stated that he had received a voice mail message that Officer Desmarais was sick and would not be testifying as scheduled. Brown then began his case, calling a CHP public safety dispatch supervisor to authenticate certain dispatch records. According to the witness, the dispatch records showed that on June 3, 2006, at approximately 12:15 a.m., Officer Desmarais radioed dispatch that he had made a traffic stop; at 12:24 a.m., he made an arrest; at 12:32 a.m., he was en route to the CHP office; and at 12:35 a.m., he arrived at the CHP office. The hearing was then continued until Officer Desmarais was available to testify.

---

[4] The court denied Brown's request for attorney fees and costs.

On October 2, 2007, before the matter reconvened, Brown filed a *Pitchess* motion, requesting discovery of Officer Desmarais's personnel records. Specifically, Brown sought information regarding complaints filed against the officer for conducting illegal traffic stops and detentions, effecting illegal arrests, testifying falsely in court or administrative proceedings, fabricating evidence against suspects, or "acts involving dishonesty, moral turpitude or conduct which reflects a morally lax character . . . ." Brown also sought records of discipline imposed on Officer Desmarais as a result of any such complaints, exculpatory or impeaching evidence, and records reflecting Officer Desmarais's absence from work on September 7, 2007.

In his supporting memorandum of points and authorities, Brown argued that there existed good cause for an in camera review of potentially responsive documents because they would be relevant to Officer Desmarais's credibility, and Brown was contending that the officer fabricated evidence regarding Brown's driving pattern, his performance on the field sobriety tests, and the circumstances surrounding the breath testing.

By letter dated October 24, 2007, the Attorney General, on behalf of the CHP, opposed Brown's motion, urging that because "only a court of law, and *not* an administrative tribunal, has the legal authority to entertain a *Pitchess* motion," the DMV hearing officer lacked authority to order the production of documents requested in Brown's motion. The letter concluded by stating that the CHP would not be producing records at the hearing scheduled for the following day.

On October 25, 2007, the matter reconvened for a hearing on Brown's *Pitchess* motion, and Brown submitted a reply brief disputing the CHP's position. After considering the submissions, the hearing officer denied Brown's motion.

On November 14, 2007, Brown petitioned the superior court for a writ of administrative mandamus directing the hearing officer to grant Brown's *Pitchess* motion and compel the CHP to produce Officer Desmarais's personnel records.

On April 2, 2008, the DMV answered Brown's petition, denying his allegations and alleging that "[t]he suspension of the petitioner's driver's license and the denial of petitioner's 'Pitchess' motion were lawful, proper, and required by law." The DMV filed opposition two days later, again taking the position that *Pitchess* discovery is available only in a court proceeding, and not in a DMV administrative per se hearing. Brown filed a reply on April 7, 2008.

After briefing was completed, the trial court issued a tentative ruling granting the petition, which ruling read as follows: "The Petition for Writ of

Mandate is GRANTED. Evidence Code § 1043 specifically gives an 'administrative body' the authority to entertain a Pitchess motion such as that brought by Petitioner. The Department of Motor Vehicles ('DMV') does not contend that it is not an 'administrative body.' Although Evidence Code §§ 1045(b), (c), (d) and (e) use the word 'court' in describing who should conduct the review of police personnel records and Evidence Code § 915(b) anticipates that the in camera review of privileged information will be conducted by a 'court,' the Court finds that the term 'court' as used in these sections can be read to encompass administrative license suspension proceedings conducted by a DMV hearing officer as the administrative law court. The Court also takes note of the amendments to Government Code § 11507.7(d) permitting administrative law judges to rule on privilege claims in accordance with the procedures in Evidence Code § 915(b), which amendments postdate Evidence Code §§ 1043 and 915, and the State Personnel Board decision *In re Ronald J. Kraemer.* While DMV hearing officers are not administrative law judges, they are capable of determining whether an officer's file contains relevant and discoverable information after taking into consideration the competing interests at stake. [¶] Accordingly, the Court finds that the administrative hearing officer in this matter was authorized to entertain Petitioner's Motion to Discover Police Personnel [Records] and Records of Citizen Complaints and will grant the Petition and judgment commanding DMV to set aside its October 25, 2007 decision denying Petitioner's Motion on the basis that the hearing officer lacked such authority."[5]

The petition was set for hearing on April 14, 2008, but neither party contested the tentative ruling and it was entered as the order of the court without argument. The court also entered judgment granting the petition and ordering the DMV to "set aside its October 25, 2007, decision denying Petitioner's Motion to Discover Police Personnel Records and Records of Citizen Complaints on the basis that the DMV hearing officer lacked such authority and is Ordered to conduct a hearing on Petitioner's motion in accordance with the procedures set forth in Evidence Code §§ 1043 and 1045."

On May 8, 2008, the DMV filed this timely appeal.

### DISCUSSION

A. *Standard of Review*

Typically, "[a] motion for discovery of peace officer personnel records is addressed to the sound discretion of the trial court, reviewable for abuse."

---

[5] The trial court also tentatively denied Brown's request for attorney fees and costs, finding "that the DMV hearing officer's decision was not the result of 'arbitrary' or 'capricious' action."

(*Alford v. Superior Court, supra*, 29 Cal.4th at p. 1039.) Brown urges us to review the trial court's decision for abuse of discretion, claiming that the matter presents mixed questions of fact and law requiring deference to the trial court's factual determinations. Specifically, Brown claims that the trial court made a "factual finding" "that DMV hearing officers are competent to determine 'whether an officer's file contains relevant and discoverable information after talking [*sic*] into consideration the competing interest at stake.' " We do not understand that there was any evidence on this issue, and thus do not understand how it can be a finding of "fact."

However, at oral argument Brown's counsel conceded, and rightfully so, that the appropriate review is de novo. The issue before us is whether a *Pitchess* motion is available in a DMV administrative per se hearing. This is purely a question of statutory construction, a matter of law we review de novo. (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 311 [93 Cal.Rptr.3d 559, 207 P.3d 20]; *Jones v. Pierce* (1988) 199 Cal.App.3d 736, 741 [245 Cal.Rptr. 149] ["Questions of statutory interpretation are, of course, pure matters of law upon which we may exercise our independent judgment."].)

### B. *Rules Governing Statutory Construction*

■ We set out the rules governing statutory construction in *MacIsaac v. Waste Management Collection & Recycling, Inc.* (2005) 134 Cal.App.4th 1076 [36 Cal.Rptr.3d 650] (*MacIsaac*): " '[O]ur primary task is to determine the lawmakers' intent,' " which we are to do using a three-step process. (*Id.* at p. 1082.) We first "look to the words of the statute themselves. [Citations.] The Legislature's chosen language is the most reliable indicator of its intent because ' "it is the language of the statute itself that has successfully braved the legislative gauntlet." ' [Citation.] We give the words of the statute 'a plain and commonsense meaning' unless the statute specifically defines the words to give them a special meaning. [Citations.] If the statutory language is clear and unambiguous, our task is at an end . . . ." (*Id.* at pp. 1082–1083.) But, as our Supreme Court has explained, we do not "consider the statutory language in isolation, but rather examine the entire substance of the statute in order to determine the scope and purpose of the provision, construing its words in context and harmonizing its various parts." (*Alford v. Superior Court, supra*, 29 Cal.4th at p. 1040.)

*MacIsaac* then described the second step: "When the plain meaning of the statute's text does not resolve the interpretive question, we must proceed to the second step of the inquiry." (*MacIsaac, supra*, 134 Cal.App.4th at p. 1083.) In this step, we " 'may turn to rules or maxims of construction,' " and "[w]e may also look to a number of extrinsic aids, including the statute's legislative history, to assist us in our interpretation." (*Ibid.*, fn. omitted.)

And then the third: "If ambiguity remains after resort to secondary rules of construction and to the statute's legislative history, then we must cautiously take the third and final step in the interpretive process. [Citation.] In this phase of the process, we apply 'reason, practicality, and common sense to the language at hand.' [Citation.] Where an uncertainty exists, we must consider the consequences that will flow from a particular interpretation. [Citation.] Thus, '[i]n determining what the Legislature intended we are bound to consider not only the words used, but also other matters, "such as context, the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy and contemporaneous construction." [Citation.]' " (*MacIsaac, supra,* 134 Cal.App.4th at p. 1084; accord, *Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [105 Cal.Rptr.2d 457, 19 P.3d 1196]; *Pacific Gas & Electric Co. v. County of Stanislaus* (1997) 16 Cal.4th 1143, 1152 [69 Cal.Rptr.2d 329, 947 P.2d 291].)

With this framework in mind, we turn to the question of whether *Pitchess* discovery is available in a DMV administrative per se hearing—and conclude it is not.

### C. Pitchess *Discovery Is Not Available in DMV Administrative Per Se Hearings*

#### 1. *The Statutory Provisions Governing DMV Administrative Per Se Hearings Do Not Allow for* Pitchess *Discovery*

We begin our analysis with the language of the applicable statutory provisions, to ascertain whether they evidence a legislative intent to allow a driver facing license suspension to file a *Pitchess* motion in a DMV administrative per se hearing. Doing so, we look first at the procedures governing discovery in such a hearing, as described in *Lake, supra,* 16 Cal.4th at page 458: "The rules potentially governing the evidence available for use in such hearings are set forth in division 6, chapter 3, article 3 of the Vehicle Code, commencing with section 14100. [Citation.]" Vehicle Code section 14104.7 identifies the evidence that a DMV hearing officer is to consider, specifically listing the department's official records, sworn testimony, and any "evidence concerning any fact relating to the ability of the applicant or licensee to safely operate a motor vehicle," such as "[r]eports of attending or examining physicians and surgeons," "[r]eports of special investigators appointed by the department to investigate and report upon any facts relating to the ability of the person to operate a vehicle safely," and "[p]roperly authenticated reports of hospital records, excerpts from expert testimony received by the department or a hearing board upon similar issues of scientific fact in other cases, and the prior decision of the director upon those issues." (Veh. Code, § 14104.7.) No mention is made of a peace officer's personnel records.

 Vehicle Code section 14112, subdivision (a) provides that all matters not covered by division 6, chapter 3, article 3 "shall be governed, as far as applicable, by Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2 of the Government Code," the provisions of the Administrative Procedure Act (APA), governing administrative hearings generally. (Veh. Code, § 14112, subd. (a); see *Lake, supra*, 16 Cal.4th at p. 458.) And Government Code section 11507.6, part of the applicable APA provisions, addresses discovery in administrative hearings, identifying the discovery that a party may obtain from another party and the method by which that discovery may be obtained. The specified discovery includes names and addresses of witnesses, statements of witnesses and parties to the proceeding, all writings a party intends to offer into evidence, and investigative reports.[6] (Gov. Code, § 11507.6.) That is it. As Witkin puts it in his typical terse fashion, "The extensive discovery available in civil proceedings is deemed inappropriate for administrative adjudications, 'which should be simple, quick, and inexpensive.' " And, he goes on, "[d]iscovery is allowed to all

---

[6] Government Code section 11507.6 provides in its entirety: "After initiation of a proceeding in which a respondent or other party is entitled to a hearing on the merits, a party, upon written request made to another party, prior to the hearing and within 30 days after service by the agency of the initial pleading or within 15 days after the service of an additional pleading, is entitled to (1) obtain the names and addresses of witnesses to the extent known to the other party, including, but not limited to, those intended to be called to testify at the hearing, and (2) inspect and make a copy of any of the following in the possession or custody or under the control of the other party:

"(a) A statement of a person, other than the respondent, named in the initial administrative pleading, or in any additional pleading, when it is claimed that the act or omission of the respondent as to this person is the basis for the administrative proceeding;

"(b) A statement pertaining to the subject matter of the proceeding made by any party to another party or person;

"(c) Statements of witnesses then proposed to be called by the party and of other persons having personal knowledge of the acts, omissions or events which are the basis for the proceeding, not included in (a) or (b) above;

"(d) All writings, including, but not limited to, reports of mental, physical and blood examinations and things which the party then proposes to offer in evidence;

"(e) Any other writing or thing which is relevant and which would be admissible in evidence;

"(f) Investigative reports made by or on behalf of the agency or other party pertaining to the subject matter of the proceeding, to the extent that these reports (1) contain the names and addresses of witnesses or of persons having personal knowledge of the acts, omissions or events which are the basis for the proceeding, or (2) reflect matters perceived by the investigator in the course of his or her investigation, or (3) contain or include by attachment any statement or writing described in (a) to (e), inclusive, or summary thereof.

"For the purpose of this section, 'statements' include written statements by the person signed or otherwise authenticated by him or her, stenographic, mechanical, electrical or other recordings, or transcripts thereof, of oral statements by the person, and written reports or summaries of these oral statements.

"Nothing in this section shall authorize the inspection or copying of any writing or thing which is privileged from disclosure by law or otherwise made confidential or protected as the attorney's work product."

parties . . . but does not extend to discoverable matters in the possession of nonparties." (9 Witkin, Cal. Procedure, *supra*, Administrative Proceedings, § 102, p. 1228.)

Government Code section 11507.6 is particularly noteworthy for three reasons. First, and again, no mention is made of law enforcement personnel files. Second, it expressly provides that "[n]othing in this section shall authorize the inspection or copying of any writing or thing which is privileged from disclosure by law or otherwise made confidential . . . ," and Penal Code section 832.7, subdivision (a) specifically designates peace officer personnel records as confidential. And third, it "provide[s] the exclusive right to and method of discovery as to any proceeding governed by" the APA provisions. (Gov. Code, § 11507.5.)

These are the statutory provisions governing discovery in DMV administrative per se hearings. They do not provide for *Pitchess* discovery.

Arguing to the contrary, Brown ignores the statutes governing discovery in DMV hearings, and focuses instead on two isolated terms in two of the statutes governing *Pitchess* motions, claiming that these terms demonstrate that *Pitchess* discovery is available in DMV administrative per se hearings. The first term is in Evidence Code section 1043, which provides that "the party seeking the discovery or disclosure shall file a written motion with the appropriate court or administrative body . . . ." The second term is in Penal Code section 832.7, which dictates that peace officer personnel records may only be "disclosed in any criminal or civil proceeding." From there, Brown concludes that the Legislature expressly intended a party to be able to pursue *Pitchess* discovery in all administrative proceedings, including DMV administrative per se hearings. We are not persuaded.

■ Evidence Code section 1043 does not provide that *Pitchess* discovery is available in *"any"* judicial or administrative proceeding. And nothing suggests that this section defines the scope of proceedings in which *Pitchess* discovery is available. Rather, this provision merely sets out *how* to initiate the process of obtaining the records, that is, where to file the motion—not *when* those records are obtainable. Contrary to Brown's assertion, such construction does not render Evidence Code section 1043's reference to filing a motion with the appropriate "administrative body" surplusage, as there may be administrative proceedings in which *Pitchess* discovery is permitted (though our research has found no published opinions in which *Pitchess* discovery was permitted in an administrative hearing). ■ In sum, Vehicle Code section 14112 and Government Code sections 11507.5 and 11507.6 provide the exclusive means for obtaining discovery in DMV administrative per se hearings. They do not contemplate—or countenance—*Pitchess* discovery.

Brown argues that omission from the Vehicle and Government Codes of any provision for *Pitchess* discovery is inconsequential, submitting that it "flows not from an intent on the part of the Legislature to preclude licensees from obtaining such information," but instead from "a clear legislative mandate that the discovery of such information be sought exclusively by filing a motion which satisfies the requirements of Evidence Code § 1043." And, he contends, Evidence Code section 1043 is a "specific statute" which controls over "the more general discovery provisions in the Vehicle and Government Codes." These arguments fail, given that Vehicle Code section 14112 and Government Code sections 11507.5 and 11507.6 are the exclusive means for obtaining discovery in the hearings.

 It is true, as the DMV concedes, that Government Code section 11507.7, part of the APA's discovery provisions, establishes procedures for compelling discovery in administrative per se hearings. This section does not, however, undermine our conclusion, as it expressly limits itself to a "party's request for discovery pursuant to Section 11507.6"—which section, as detailed above, does not mention *Pitchess* discovery. And as the DMV concisely states, "Had the Legislature intended to make a *Pitchess* motion a discovery tool in DMV administrative per se hearings, it could easily have done so by including or referencing the provisions of Evidence Code § 1043 et seq. as an approved method of discovery within Government Code section[s] 11507.6 and 11507.7." To that we add this: the Legislature could also have provided for *Pitchess* discovery in Vehicle Code section 14100 et seq., the provisions specifically governing DMV administrative per se hearings. It did not.

 Our conclusion finds further support in several sections of the Evidence Code. For example, section 1045, which governs review for potentially relevant records in a peace officer's personnel file, provides that in determining such relevance, "the court shall examine the information in chambers . . . ." (Evid. Code, § 1045, subd. (b).) Section 1045 also identifies considerations "the court" shall undertake in weighing relevance (Evid. Code, § 1045, subd. (c)); instructs that "the court may make any order which justice requires to protect the officer or agency from unnecessary annoyance, embarrassment or oppression" (Evid. Code, § 1045, subd. (d)); and authorizes "[t]he court" to "order that the records disclosed or discovered may not be used for any purpose other than a court proceeding pursuant to applicable law." (Evid. Code, § 1045, subd. (e).) Such language contemplates review of the confidential records by a judicial officer, not a DMV employee.

In granting Brown's petition, the trial court dismissed the significance of these repeated references to "the court," "find[ing] that the term 'court' as used in these sections can be read to encompass administrative license suspension proceedings conducted by a DMV hearing officer as the administrative law court." The court cited no authority in support of this "finding."

When construing a statute, a court must assume the Legislature intended the words used to have their plain meaning. (*Hunt v. Superior Court* (1999) 21 Cal.4th 984, 1000 [90 Cal.Rptr.2d 236, 987 P.2d 705].)

█ Evidence Code sections 914 and 915 provide further support. Section 914 recognizes a distinction between the authority of presiding officers and that of courts in ruling on claims of privilege. It provides that a "presiding officer shall determine a claim of privilege . . ." (Evid. Code, § 914, subd. (a)), but that "[n]o person may be held in contempt for failure to disclose information claimed to be privileged unless he has failed to comply with an order of a court that he disclose such information." (*Id.*, subd. (b).) As to this provision, the Law Revision Commission Committee observed: "Subdivision (b) is needed to protect persons claiming privileges in nonjudicial proceedings. Because such proceedings are often conducted by persons untrained in law, it is desirable to have a judicial determination of whether a person is required to disclose information claimed to be privileged before he can be held in contempt for failing to disclose such information. What is contemplated is that, if a claim of privilege is made in a nonjudicial proceeding and is overruled, application must be made to a court for an order compelling the witness to answer. Only if such order is made and is disobeyed may a witness be held in contempt. That the determination of privilege in a judicial proceeding is a question for the judge is well-established California law." (Cal. Law Revision Com. com., Deering's Ann. Evid. Code (2004 ed.) foll. § 914, p. 90.)

Evidence Code section 915,[7] expressly incorporated by reference into the *Pitchess* statutory scheme by Evidence Code section 1045, subdivision (b), also distinguishes between the authority of presiding officers and that of

---

[7] Evidence Code section 915 provides:

"(a) Subject to subdivision (b), the presiding officer may not require disclosure of information claimed to be privileged under this division or attorney work product under subdivision (a) of Section 2018.030 of the Code of Civil Procedure in order to rule on the claim of privilege; provided, however, that in any hearing conducted pursuant to subdivision (c) of Section 1524 of the Penal Code in which a claim of privilege is made and the court determines that there is no other feasible means to rule on the validity of the claim other than to require disclosure, the court shall proceed in accordance with subdivision (b).

"(b) When a court is ruling on a claim of privilege under Article 9 (commencing with Section 1040) of Chapter 4 (official information and identity of informer) or under Section 1060 (trade secret) or under subdivision (b) of Section 2018.030 of the Code of Civil Procedure (attorney work product) and is unable to do so without requiring disclosure of the information claimed to be privileged, the court may require the person from whom disclosure is sought or the person authorized to claim the privilege, or both, to disclose the information in chambers out of the presence and hearing of all persons except the person authorized to claim the privilege and any other persons as the person authorized to claim the privilege is willing to have present. If the judge determines that the information is privileged, neither the judge nor any other person may ever disclose, without the consent of a person authorized to permit disclosure, what was disclosed in the course of the proceedings in chambers."

courts in ruling on claims of privilege. Pursuant to subdivision (a), a "presiding officer" may not require disclosure of privileged information in order to rule on the claim of privilege, while subdivision (b) provides that a "court" ruling on a claim of privilege "may require the person from whom disclosure is sought or the person authorized to claim the privilege, or both, to disclose the information in chambers" in order to rule on the claim. (Evid. Code, § 915.) Again, the Law Revision Commission's observations are instructive: "The exception in subdivision (b) applies only when a court is ruling on the claim of privilege. Thus, in view of subdivision (a), disclosure of the information cannot be required, for example, in an administrative proceeding." (Cal. Law Revision Com. com., Deering's Ann. Evid. Code, *supra*, foll. § 915, p. 92.) By expressly incorporating Evidence Code section 915 into the *Pitchess* statutory scheme, the Legislature effectively precluded DMV hearing officers from reviewing confidential records in peace officers' personnel files in order to make the necessary determination of whether the records contain any relevant documents.

 Brown dismisses the significance of the Law Revision Commission's comments, citing Government Code section 11507.7, which was amended in 1995 to allow administrative law judges to rule on claims of privilege. (Gov. Code, § 11507.7, subd. (d).) The result, he submits, is that "After the amendment of Government Code § 11507.7 in 1995, it is no longer tenable to claim that the Law Revision Commission Comments to Evidence Code §§ 914 and 915 continue to bar the 'presiding officer' at an administrative hearing from ruling on claims of privilege in discovery proceedings." Brown's argument ignores one glaring—and critical—fact: DMV hearing officers are not administrative law judges. While Government Code section 11507.7, subdivision (d) allows administrative law judges to rule on claims of privilege, no such provision exists for DMV hearing officers.

In light of the above, we need not reach *MacIsaac*'s second and third steps. We nevertheless discuss them, however briefly, as they lend strong support to our conclusion that *Pitchess* discovery is not available in DMV administrative per se hearings.

2. *The Legislative History Likewise Suggests That the Legislature Did Not Intend* Pitchess *Discovery to Extend to Administrative Per Se Hearings*

As noted, the *Pitchess* opinion recognized a criminal defendant's right to discovery of records in a peace officer's personnel file to support a claim of

self-defense to charges of assault on the officer. In the wake of *Pitchess*, allegations surfaced from defendants that law enforcement agencies were shredding records, while agencies claimed that defendants were abusing the discovery process by randomly seeking personnel records. (*City of Los Angeles v. Superior Court, supra*, 111 Cal.App.4th at p. 889; *San Francisco Police Officers' Assn. v. Superior Court, supra*, 202 Cal.App.3d at pp. 189–190.) That was the context in which the statutes codifying *Pitchess* discovery came about.

The Legislature responded with Senate Bill No. 1436 (1977–1978 Reg. Sess.), which ultimately became Evidence Code sections 1043 and 1045 and Penal Code sections 832.7 and 832.8. And the legislative history of that bill indicates that it was intended to detail procedures for obtaining discovery of law enforcement personnel records in cases involving allegations of excessive force.

Specifically, in an analysis prepared for the Assembly Committee on Criminal Justice, the author summarized the history leading up to the *Pitchess* opinion and Senate Bill No. 1436 (1977–1978 Reg. Sess.), observing, "Defense attorneys have for a long time recognized that it is useful to obtain Internal Affairs information concerning citizen complaints against officers for excessive force and other misconduct in order to show that the officer in question has a tendency for initiating violent encounters with citizens." The author subsequently observed: "The basic issue presented by this bill is whether a peace officer or his or her employing agency may prevent discovery of information which a court has determined to be relevant to the defense of a party charged with a criminal offense and still not violate the defendant's right to a fair trial and right to full due process under the law. The Supreme Court in *Pitchess* seems to have already said that such information cannot be denied unless the prosecution is prepared to dismiss the charges." The final analysis prepared for the committee was similar: "What has developed under current law is that where a defendant is charged with a criminal assault on a peace officer and there is the possibility of an assertion of self-defense to the charge, defense attorneys have requested discovery of the victim-officer's personnel files to determine if the officer has had complaints for use of excessive force, in order to demonstrate that the officer has a propensity for violent behavior."[8]

---

[8] Also instructive are comments by then Attorney General Evelle Younger to then Governor Edmund G. Brown, Jr., urging the Governor to sign Senate Bill No. 1436 (1977–1978 Reg. Sess.) which, Younger explained, "was drafted by [his] office in order to assist law enforcement officers throughout the State of California." He continued: "Senate Bill [No.] 1436 protects the privacy of law enforcement officers in California by establishing procedures which prevent unreasonable and bad faith efforts to obtain access to a peace officer's personnel file. Under existing case law, *defendants in criminal cases are authorized to have access to such*

These and other such passages suggest that in enacting Senate Bill No. 1436 (1977–1978 Reg. Sess.) (Senate Bill No. 1436) the Legislature intended to establish procedures to govern the discovery authorized by *Pitchess, supra*, 11 Cal.3d 531, discovery limited to criminal cases involving allegations of officer use of excessive force. There is no suggestion that the Legislature inexplicably intended to increase the scope of *Pitchess* discovery to include discovery of law enforcement personnel records in every proceeding—criminal, civil, or administrative—where the moving party claims the records are relevant to any issue, such as the officer's credibility.

The purpose of the statutory scheme was to reign in *Pitchess* motions. (*City of Santa Cruz v. Municipal Court, supra*, 49 Cal.3d at p. 96 [Sen. Bill No. 1436 (1977–1978 Reg. Sess.) grew out of dissatisfaction with the volume of *Pitchess* motions filed in the wake of the *Pitchess* decision].) The interpretation advocated by Brown would serve to drastically increase them. Worse yet, such a sweeping interpretation would open the door for *Pitchess* discovery in every proceeding in which a peace officer was involved under the guise that the records would be relevant to the officer's credibility. Indeed, Brown took this even a step further, seeking records regarding Officer Desmarais's absence from work on September 7, 2007, the date of Brown's reconvened hearing at which the officer was unavailable to testify. If this were allowed, there would be no limit on when such motions could be filed. This is not what the Legislature intended.

What, then, did the Legislature intend by including references to "civil proceeding" and "administrative body" in Penal Code section 832.7 and Evidence Code section 1043, respectively? The legislative history on this is sparse. It is reasonable to assume, however, that the Legislature intended "civil proceeding" to include a lawsuit against an officer or an agency for police misconduct, where citizen complaints concerning the officer's prior violent conduct would be relevant to the plaintiff's claims. In other words, it would allow discovery of excessive force by an officer, used offensively instead of defensively.[9]

---

records, and have repeatedly misused this authority to engage in harrassment [*sic*] of peace officers involved in their cases. [¶] Senate Bill [No.] 1436 provides a uniform procedure for attempting to obtain access to a peace officer's personnel record. It restricts access only to those instances in which access is clearly needed in order to insure fair trial. It prohibits access to complaints which are unfounded or which are very old. In addition, it states that a peace officer's personnel record is a confidential document, thus bringing into play various protections which exist in the law in regard to confidential records."

[9] This conclusion finds support in an analysis prepared for the Assembly Committee on Criminal Justice, in which the author observed, "In a civil suit against the department for misconduct by the officer this bill gives control over the disclosure of the relevant information to the officers even if the employing agency objects."

As to the phrase "administrative body," an analysis prepared for the Senate Committee on Judiciary contains the only reference to an administrative proceeding in Senate Bill No. 1436's legislative history of which we are aware. There, in discussing the bill's proposed retention requirements for citizen complaints, the author explained, "This bill would require that citizens' complaints against police officers, and any findings resulting from investigations thereof, be retained [¶] (a) for one year where the complaints are anonymous or unsigned, or where the complaints are deemed withdrawn because of actual withdrawal or by failure of the complainant to cooperate in the investigation or to appear at any administrative hearing; or [¶] (b) for 3 years in all other cases. [¶] Failure of a complainant to appear at any administrative hearing could be caused by a myriad of events, including fear of repercussions from making the complaint in the first place." This suggests that the reference to "administrative body" in Evidence Code section 1043 may have been contemplating an administrative hearing held to evaluate a citizen complaint filed against a peace officer. Whatever the case, this by no means supports Brown's claim that the Legislature intended *Pitchess* discovery to be available in all administrative proceedings.

Ultimately, it is beyond dispute "that the main purpose of the 1978 legislation (Sen. Bill No. 1436) was to curtail the practice of record shredding and discovery abuses which allegedly occurred in the wake of the" *Pitchess* decision, while protecting "personnel records from random discovery by defendants asserting self-defense to charges of criminal assault upon a police officer." (*San Francisco Police Officers' Assn. v. Superior Court, supra*, 202 Cal.App.3d at pp. 189–190.) Given the genesis of the legislation and the repeated references in the legislative history to Sen. Bill No. 1436's aim of establishing procedures for eliminating the abuses that followed the *Pitchess* decision, it is clear to us that the Legislature did not intend Evidence Code sections 1043 and 1045 and Penal Code sections 832.7 and 832.8 to apply to DMV administrative per se hearings.

3. *The Very Purpose of DMV Administrative Per Se Hearings Would Be Undermined by Extending* Pitchess *Discovery to Such Hearings*

As we said in *MacIsaac*, "In [the third] phase of the process, we apply 'reason, practicality, and common sense to the language at hand.' [Citation.] Where an uncertainty exists, we must consider the consequences that will flow from a particular interpretation. [Citation.] Thus, '[i]n determining what the Legislature intended we are bound to consider not only the words used, but also other matters, "such as context, the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy and contemporaneous construction." [Citation.]' " (*MacIsaac, supra*, 134 Cal.App.4th at p. 1084.)

As noted above, a fundamental purpose of the DMV administrative per se hearing is to provide a " 'swift and certain' " (*Bell v. Department of Motor Vehicles, supra*, 11 Cal.App.4th at p. 312) procedure to "quickly" suspend the license of a person suspected of drunk driving. (*Gikas v. Zolin, supra*, 6 Cal.4th at p. 847.) Permitting *Pitchess* discovery in such a hearing would be the antithesis.

We set out above the two steps involved in obtaining *Pitchess* discovery: (1) the noticed motion, and (2) if good cause is found, the in camera review of the documents. The notice requirement alone dictates a minimum of 21 days, assuming the driver gives the minimum required notice and the date is available on the court's calendar. Obviously, the delay can be far longer. Assuming the hearing officer grants the motion, the custodian of records would be required to review the officer's personnel file and then produce "potentially relevant" documents from it. However long that would take is anyone's guess. The hearing officer would then be required to review the records in camera, in the presence of the custodian and with a court reporter, causing significantly more delay, not to mention expense. (Evid. Code, § 1045, subd. (b); *People v. Mooc, supra*, 26 Cal.4th at p. 1226.) If that review reveals documents that require production, the producing agency would then need time to prepare the documents for production. (See *Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1019 [29 Cal.Rptr.3d 2, 112 P.3d 2].) That is hardly conducive to a hearing that is to be "swift and certain."

Brown dismisses the significance of this as well, claiming it to be "belied by the appellate record here which fails to show the cause for the seven months' delay in completing the hearing and rendering a decision" regarding his impending license suspension, a delay Brown presumes "was attributable to the press of business at the DMV." Such presumption is devoid of any support in the record, and we could just as easily speculate that Brown himself—who, not incidentally, was experienced with the system—was the cause of delay. Regardless, the fact that there were delays in Brown's case unrelated to the *Pitchess* discovery does not negate the fact that such discovery would unquestionably lengthen the review process, undermining the very goal of the administrative per se laws.

The DMV also raises a number of concerns about procedural problems that would arise should *Pitchess* motions be permitted in administrative per se hearings. For example, if the law enforcement agency—here the CHP—refused to produce the requested personnel records, what would be the remedy, given that the DMV hearing officer lacks the authority to hold the agency in contempt? The hearing officer would have to certify the facts justifying a contempt sanction to the superior court of the county in which the proceeding was being conducted. That court would then order the custodian

of records to appear and show cause why he or she should not be punished for contempt. After the certified statement of facts and the order to show cause were served on the custodian of records, the court would have jurisdiction to determine whether the custodian should be held in contempt. (See Gov. Code, §§ 11455.10, subd. (e), 11455.20, subd. (a).) We hesitate to speculate as to how long all this would take.

Further, how would the hearing officer's *Pitchess* ruling be reviewed? Such a ruling is typically reviewed for abuse of discretion (*Alford v. Superior Court, supra,* 29 Cal.4th at p. 1039), but administrative per se hearings are subject to independent review by the superior court. (Code Civ. Proc., § 1094.5.) How would these differing standards be reconciled? These complications further demonstrate that *Pitchess* discovery is not available in the DMV hearings.

While we are obviously concerned with the delay that would result should *Pitchess* motions be available in administrative per se hearings, we also question the relevance of *Pitchess* discovery in such hearings. The role of the DMV hearing officer is to determine three things: whether (1) the arresting officer had reasonable cause to believe the driver was driving under the influence; (2) the driver was lawfully placed under arrest; and (3) the driver was driving with a BAC of 0.08 percent or greater. (Veh. Code, §§ 13558, subd. (c)(2), 13557, subd. (b)(2).) That records in the arresting officer's personnel file could have any bearing on these questions is dubious.

Brown argued below that the requested records were relevant to Officer Desmarais's credibility, which was in question because Brown was contending that the officer fabricated evidence regarding his driving pattern, his performance on the field sobriety tests, and the circumstances surrounding the breath testing, and because of inconsistencies between the officer's testimony and the dispatch report. But the hearing officer was already in possession of the police report, the officer's testimony, and the dispatch records, among other evidence, all of which are sufficient to address Officer Desmarais's credibility. If a challenge to the officer's credibility was a basis for obtaining the arresting officer's personnel records, why would any licensee in an administrative per se hearing—or, for that matter, any party in any proceeding, civil or criminal, in which an officer would be a witness—*not* pursue *Pitchess* discovery in the hope of finding something potentially damaging in the personnel records? The potential for discovery abuse is staggering.

As quoted above, subdivision (d) of Evidence Code section 1045 authorizes "the court [to] make any order which justice requires to protect the

officer or agency from unnecessary annoyance, embarrassment or oppression," and subdivision (e) directs "[t]he court" to "order that the records disclosed or discovered may not be used for any purpose other than a court proceeding pursuant to applicable law." As we said, this language of the *Pitchess* statutory scheme, with its repeated references to "the court," contemplates that *Pitchess* motions are to be ruled on by judicial officers. This conclusion is bolstered by the DMV hearing officer's lack of qualification to be ruling on a *Pitchess* motion and evaluating potentially relevant documents, as such officers lack the legal expertise for deciding the important complex legal issues presented by *Pitchess* motions.

Moreover, because the administrative per se hearing "need not be conducted according to technical rules relating to evidence and witnesses" (Gov. Code, § 11513, subd. (c)), there is no guarantee that the hearing officer has the skills to be deciding the evidentiary issues presented by *Pitchess* motions, such as "good cause" and "relevance." (See also *Petricka v. Department of Motor Vehicles* (2001) 89 Cal.App.4th 1341, 1348 [107 Cal.Rptr.2d 909] ["informal nature of an administrative DMV hearing . . . does not require the full panoply of the Evidence Code provisions used in criminal and civil trials"]; *Tabory v. State Personnel Board* (1962) 208 Cal.App.2d 543, 546 [25 Cal.Rptr. 333] ["[a]dministrative findings . . . need not be stated with the formality and precision required in judicial proceedings"].)

Brown counters by identifying additional issues DMV hearing officers are called upon to decide, such as ruling on evidentiary challenges and discovery issues, issues he describes as "broad and complex." Thus, Brown submits, the DMV hearing officers are competent to handle a *Pitchess* discovery motion, and he cites the trial court—and only the trial court—in support: "While DMV hearing officers are not administrative law judges, they are capable of determining whether an officer's file contains relevant and discoverable information after taking into consideration the competing interests at stake." There is simply no support for this conclusion.

The hearing officers lack the legal training to rule on the nuanced issues presented by a *Pitchess* motion, such as sufficiency of the affidavit and the materiality of the requested documents. When the documents in question are sensitive materials in a peace officer's personnel record, it is critical that the individual ruling on the privilege claim be adequately trained. Putting *Pitchess* motions in the hands of anyone less than fully qualified would undermine one of the primary purposes of the *Pitchess* procedures, protecting the confidentiality and privacy of the officer. (*Alford v. Superior Court, supra,* 29 Cal.4th 1033, 1039.)

## DISPOSITION

The judgment granting Brown's petition for issuance of writ of administrative mandamus is reversed. The matter is remanded to the DMV for completion of the administrative per se hearing on the issue of suspension of Brown's driver's license.

Kline, P. J., and Haerle, J., concurred.