Filed 1/23/14  P. v. Hernandez CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JESSE HERNANDEZ,<br><br>    Defendant and Appellant. | B244019<br><br>(Los Angeles County<br>Super. Ct. No. VA124498) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Dewey L. Falcone, Judge; Lori Ann Fournier, Judge.  Affirmed.

John Doyle, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Brendan Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant and appellant Jesse Hernandez appeals from his conviction of receiving stolen property. He contends it was error to deny: (1) his Penal Code section 1538.5 motion and (2) his *Pitchess* motion.[1] We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The issues on appeal do not require a detailed recitation of the facts. It is sufficient to state that, viewed in accordance with the usual rules on appeal (*People v. Zamudio* (2008) 43 Cal.4th 327, 357-358), the evidence established that Gustavo Villegas's cell phone was taken without his permission by an unknown person sometime in 2009. Three years later, on the evening of April 2, 2012, an unknown person took five UPS boxes addressed to Robert Sanchez, which had been sitting on the front porch of Sanchez's Montebello home. Villegas's cell phone and three of Sanchez's five UPS boxes were found the next day in a shed located in the backyard of defendant's family home.

The home was owned by defendant's grandfather, Robert Acosta. Then 32 years old, defendant lived there with his grandfather, mother and girlfriend; Acosta's three granddaughters and one great-grandchild also lived in the home. Acosta had given defendant permission to use the backyard shed in which the stolen goods were found, but had since rescinded that permission. Without Acosta's authorization, defendant had placed a lock on the shed to which he had not given Acosta a key. On April 3, Acosta called 911 after a fight with defendant about, among other things, defendant's failure to take his things out of the shed. When Deputy Ramirez responded to a "family disturbance" report at Acosta's home, Acosta told Ramirez he suspected that defendant was storing stolen goods in the shed. Ramirez reported Acosta's suspicions to Detectives Escobedo and Valenzuela, who went to Acosta's home that afternoon to investigate the stolen goods report. Acosta consented to a search of the shed and used his own bolt

---

[1]   *Pitchess v. Superior Court* (1974) 11 Cal.3d 531. All future undesignated statutory references are to the Penal Code.

cutters to cut off the lock. Villegas's cell phone and three of Sanchez's five UPS boxes were found in the shed. Neither Villegas nor Sanchez knew defendant, or any of the other people living in Acosta's home. Defendant was arrested on April 17, after a deputy sheriff found defendant hiding in Acosta's car, parked in the garage.

Defendant was charged by amended information with two counts of receiving stolen property (§496, subd. (a)); two prior prison term enhancements were also alleged (§ 667.5, subd. (b)). A jury convicted defendant of count 1 (Sanchez's stolen UPS boxes), but acquitted him of count 2 (Villegas's stolen cell phone). In a bifurcated proceeding, defendant stipulated to one enhancement and the People agreed to strike the second. Defendant was sentenced to three years in prison, comprised of the two-year midterm on count 1, plus a consecutive one year for the prior prison term. He timely appealed.

## DISCUSSION

A.    *Denial of Defendant's Motion to Suppress Was Not Error*

Defendant contends the trial court erred in denying his section 1538.5 motion to suppress evidence found in the warrantless search of the shed. He argues Acosta did not have actual or apparent authority to consent to the search because defendant had exclusive use of the shed. We disagree.

" 'In reviewing the denial of a motion to suppress evidence, we view the record in the light most favorable to the trial court's ruling . . . .' [Citation.] We 'defer to its findings of historical fact' and 'determine as a matter of law whether there has been an unreasonable search and/or seizure.' [Citation.]" (*People v. Dachino* (2003) 111 Cal.App.4th 1429, 1432.)

It is well-settled that, with consent, a warrantless search is reasonable under the Fourth Amendment. (*People v. Oldham* (2000) 81 Cal.App.4th 1, 9.) It is equally well-settled that a person with joint access or control of property has authority to consent to a search of that property. (*United States v. Matlock* (1974) 415 U.S. 164, 172, fn. 7.) Even

3

if the consenting person lacks authority, officers may rely on his or her apparent authority. (*Oldham,* at p. 10.)

In *People v. Daniels* (1971) 16 Cal.App.3d 36, the issue was whether a mother had authority to consent to a search of her adult son's bedroom. The court concluded that she did. "The search of the bedroom used by a son living with a parent who owns the premises of which the bedroom is a part, when made with the consent of the parent, is reasonable, absent circumstances establishing the son has been given exclusive control over the bedroom. [Citations.] Parents with whom a son is living, on premises owned by them, do not ipso facto relinquish exclusive control over that portion thereof used by the son. To the contrary, the mere fact the son is permitted to use a particular bedroom, as such, does not confer upon him exclusive control thereof. [Citation.] His occupancy is subservient to the control of his parents. [Citations.] He may be excluded from the premises by them at any time. [Citation.] They may enter and search the room at will, or may authorize others to make such a search. [Citations.]" (*Id*. at pp. 43-44; see also *People v. Oldham, supra,* 81 Cal.App.4th at p. 9 [father had apparent authority to consent to search of bedroom occupied by adult son; son had joint control of bedroom but father, who had right to exclude son from apartment, had superior control].)

Here, the evidence at the section 1538.5 hearing, at which Acosta and Escobedo testified, established that Acosta had actual and apparent authority to consent to a search of the shed. Detective Escobedo testified that when she arrived at Acosta's home to investigate the stolen goods report, Acosta walked Escobedo through the house, into one bedroom, and then into the backyard. In the backyard, Escobedo saw a shed with a pair of sliding doors held together by one or more locks; Escobedo could not recall what kind of lock or whether there was a chain. Acosta told Escobedo that the shed belonged to him; Acosta had told defendant more than once to remove his things from the shed; defendant had placed a lock on the shed without Acosta's permission as a result of which defendant was the only person with easy access to the shed. Acosta said he believed defendant was storing stolen goods in the shed. Illuminating the interior of the shed by shining her flashlight through a three inch gap between the sliding doors, Escobedo saw

4

some baby items (later determined to belong to Acosta's granddaughter), a guitar, tools and some boxes. The boxes were labeled with a name and Montebello address which Acosta said he did not recognize. Acosta asked Escobedo if he could cut the lock off the shed. Escobedo responded affirmatively. While Acosta was getting his bolt cutters, Escobedo called the Montebello police and requested that they send an officer to the address on the boxes to investigate. While Escobedo was waiting to hear back from the Montebello police, Acosta cut open the lock. After doing so, Acosta signed a consent to search form Escobedo gave him. Escobedo then heard back from the Montebello police with confirmation that the boxes met the description of the boxes stolen from Sanchez's porch. Escobedo later confirmed this with Sanchez.

Acosta testified that he gave defendant permission to use the backyard shed. Acosta did not know who put the locks on the shed. By April 3, Acosta no longer wanted defendant to live with him or use the shed, so he called the police to tell them he wanted defendant's things removed from the shed. Acosta did not recall telling the responding officer (i.e. Ramirez) that defendant was storing stolen goods in the shed. When Detective Escobedo arrived, Acosta took her through the house and unlocked the door to defendant's room so that Escobedo could look inside. Then he took her to the shed, into which Acosta wanted her to look. Acosta gave Escobedo permission to go into the shed after Escobedo told Acosta that she would get a search warrant. Acosta explained that he did not feel that he had to cut open the lock, "I didn't actually – it came from me – actually, the reason that I wanted – I wanted to find out what was there so I was trying to use the shed because I told [defendant] that I was going to use the shed. I wanted my shed back. [¶] [DEFENSE COUNSEL]: You wanted your shed back, correct? [¶] [THE WITNESS]: Yes. [¶] [DEFENSE COUNSEL]: And so you were using the police officers to get back into your shed? [¶] [THE WITNESS]: Well, they were going in, so I let them, yeah."

This evidence is sufficient to support the trial court's finding that Acosta had authority to consent to a search of the shed. It was undisputed that Acosta owned the property on which the shed was located and that he did not give defendant permission to

5

exclude Acosta from the shed.  Defendant's use of the shed was subservient to Acosta's and the fact that defendant put a lock on Acosta's shed without Acosta's permission did not alter Acosta's lawful right of access.  Under these circumstances, Acosta had authority to allow police to search the shed.

B.      *Denial of Defendant's* Pitchess *Motion Was Not An Abuse of Discretion*

Defendant contends the trial court erred in denying his *Pitchess* motion seeking complaints against Ramirez (the officer who responded to the 911 call), Escobedo and Valenzuela (the officers who investigated the stolen goods report) and Sanchez (the officer who arrested defendant).  He argues that the evidence may have made a difference to the outcome of the section 1538.5 motion.  We find no error.

The sole and exclusive means by which citizen complaints against police officers may be obtained are the *Pitchess* procedures codified in Penal Code sections 832.7 and 832.8, and Evidence Code sections 1043 and 1045.  (*Brown v. Valverde* (2010) 183 Cal.App.4th 1531, 1539.)  A *Pitchess* motion must include, among other things, an affidavit showing good cause for the discovery sought.  (Evid. Code, § 1043, subd. (b)(3); *Brown,* at p. 1539; see also *Galindo v. Superior Court* (2010) 50 Cal.4th 1, 12.)  "To show good cause as required by [Evidence Code] section 1043, [the] declaration in support of a *Pitchess* motion must propose a defense or defenses to the pending charges" and "articulate how the discovery sought may lead to relevant evidence or may itself be admissible direct or impeachment evidence [citations] that would support those proposed defenses."  (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1024 (*Warrick*).)  The declaration "must also describe a factual scenario supporting the claimed officer misconduct."  (*Ibid*.)  The threshold showing of good cause required to obtain *Pitchess* discovery is "relatively low."  (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 83, 94.)  We review *Pitchess* orders under the abuse of discretion standard.  (*People v. Hughes* (2002) 27 Cal.4th 287, 330.)

Here, defendant's *Pitchess* motion sought complaints against the named officers "relating to acts of aggressive behavior, violence, excessive force, or attempted violence

6

or excessive force, racial bias, gender bias, ethnic bias, sexual orientation bias, coercive conduct, violation of constitutional rights, fabrication of charges, fabrication of evidence, fabrication of reasonable suspicion and/or probable cause, illegal search/seizure; false arrest, perjury, dishonesty, writing of false police reports, writing of false police reports to cover up the use of excessive force, planting of evidence, false or misleading internal reports including but not limited to false overtime or medical reports, and any other evidence of misconduct amounting to moral turpitude within the meaning of *People v. Wheeler* (1992) 4 Cal.4th 284 . . . ." Counsel's declaration asserted that the police report, attached to the motion as an exhibit, was "falsified and untrue." Specifically, the police report states that Acosta told Ramirez he saw defendant placing UPS boxes, computer monitors and other items into Acosta's backyard shed, late at night and that he was "concerned that these items may be stolen." According to the police report:

> "Mr. Acosta stated he has told the suspect on several occasions to take the items out of the shed, but the suspect has refused. The suspect placed a lock on the shed and secured it. Mr. Acosta stated no one in the family has access to the shed or the lock other than the suspect.
>
> ". . . Mr. Acosta verified the information given to [Escobedo and Valenzuela] by Deputy Ramirez. Mr. Acosta told [Escobedo and Valenzuela] he wants the suspect out of the property and does not want him to return there. . . . Mr. Acosta asked us if he could open the shed. We advised Mr. Acosta the shed belonged to him and it was up to him if he wanted to open it. Mr. Acosta went inside his house and retrieved bolt cutters. . . .
>
> "Mr. Acosta used the bolt cutters to cut the lock off the shed and opened the door. . . . Mr. Acosta . . . allowed us to search the shed. . . . [¶] . . .
>
> ". . . Mr. Acosta told [Escobedo and Valenzuela] he saw the suspect carrying the UPS boxes and placing them inside the shed sometime during the evening the night before. . . . "

According to counsel's declaration, the true facts are that Acosta told the deputies that he did not know what was in the shed, which was used by several members of the household, including defendant. Counsel's declaration states:

> "Mr. Acosta . . . [stated] he would like to have [the shed] back (in order to store his own personal items inside). Deputies asked Mr. Acosta if he had a key, to which he replied he did not. Deputies asked Mr. Acosta if they could break open the lock and search the shed. Deputies specifically told Mr. Acosta that if he

7

did not give them permission, they would go and get a search warrant and end up searching it anyways.  *Mr. Acosta agreed that the deputies could search the shed and gave them a pair of bolt cutters to gain access.*

"Mr. Acosta never informed the deputies that he personally observed [defendant] carrying UPS boxes, computer monitors, and other unknown items.  Mr. Acosta never stated that [defendant] has sole access to the shed, or that he personally observed [defendant] place a lock on the shed doors.  Furthermore, Mr. Acosta never informed the deputies that he was concerned that there were stolen items inside the shed.  Mr. Acosta never informed the deputies that he had a conversation with [defendant] to remove stolen items from the shed.

"[Defendant] denies that when Deputy Sanchez came to Mr. Acosta's home, he was hiding (and covering his face with a stuffed animal)."  (Italics added.)

The trial court denied the motion, explaining that defendant had not set forth any "specific facts showing good cause to grant [the motion].  [¶]  [Acosta] testified at a hearing that he opened the shed . . . .  That he didn't feel forced to open the shed.  [¶] And as to some of the deputies that you named, they didn't author reports and overall, I think the declaration doesn't provide good cause to allow an in-camera hearing."

We find no abuse of discretion in the trial court's conclusion that defendant did not meet his burden of (1) proposing a defense to the pending charges; and (2) describing a factual scenario supporting the claimed officer misconduct.  On the contrary, consistent with Acosta's preliminary hearing testimony, counsel's declaration states that Acosta agreed that the officers could search the shed.  The only disputed facts are whether Acosta told the officers that he suspected defendant was storing stolen goods in the shed and whether other family members used the shed.  But these inconsistencies are irrelevant to the issue of consent, which was the only issue upon which defendant's section 1538.5 motion was based.

8

**DISPOSITION**

The judgment is affirmed.


                                        RUBIN, J.

WE CONCUR:


       BIGELOW, P. J.


       GRIMES, J.